## T. J. MARTIN ET AL. v. J. K. BURR ET AL.

No. 2789. Decided February 23, 1921.

(228 S. W., 543.)

1.—Water—Upper and Lower Riparian Owners.

The upper riparian owner cannot take water from a running stream for irrigation or for the operation of a railway when such use materially in-

terferes with the supply required to meet the reasonable domestic needs of lower riparian owners, including water for their stock.  (P. 62).

2.—Same—Limitation—Pleading.

A plea asserting, against the claim of a lower riparian proprietor, the adverse, peaceable and continuous use of the water of a running stream for irrigation and other purposes for more than ten years is held sufficient to present the defense of limitation as against a general demurrer, though perhaps vulnerable to special exceptions.  (Pp. 63, 64).

3.—Limitation—Land—Incorporeal Hereditament—Water Rights.

A suit to vindicate the right of a lower riparian owner to the use of the water of a flowing stream and injoin the use of it by upper proprietors for irrigation or for the operation of a railway to the detriment of his right to its use for domestic purposes, is not an action for the recovery of land within the meaning of the statutes of limitation upon such actions. It is rather in the nature of a suit to quiet title to an incorporeal hereditament; and it is barred in four years from its accrual,—coming under the provisions of Article 5690, Revised Statutes, as to actions for which no limitation is otherwise prescribed.  (Pp. 64, 65).

4.—Limitation and Prescription.

The bar by limitation of plaintiff's action to injoin the diversion of water by an upper proprietor is a question distinct from the claim of such upper proprietor to have acquired by prescription a right to such diversion. (P. 65).

5.—Prescription—Use of Running Stream.

An upper riparian proprietor may, by prescription, acquire the right to use the water of a running stream in a special way and in excess of the right arising from ownership of his land, to the injury and detriment of lower riparian proprietors;  and the time to perfect such right by prescription is ten years.  (P. 65).

6.—Same—Notice to Lower Proprietor.

Notice to the lower riparian owner of the claim of the upper to paramount rights in the use of the water is necessary before prescription begins to run.  But constructive notice has the same effect as actual; and evidence here considered is held sufficient to present an issue as to such constructive notice.  (Pp. 65, 66).

7.—Same—Pleading and Evidence.

Evidence here considered is held sufficient to furnish a basis for the determination of the extent of the use of water during ten years for irrigation and for locomotive engines; and the pleading of prescriptive rights arising therefrom is held sufficient in the absence of special exceptions. (P. 66).

8.—Water Rights—Prescription—Continuous Use.

The adverse use of the water of a running stream for irrigation is sufficiently continuous to form a basis for the claim of prescriptive right to such use though it was only during the seasons when water was needed for such purpose.  (P. 66).

9.—Water—Prescriptive Rights—Disability—Pleading and Proof.

It was not necessary, in order to establish a prescriptive right to the use of water, to plead or prove the absence of disability on the part of those against whom such prescription was claimed.  The burden was on those asserting such disability as against the prescription.  City of Austin v. Hall, 93 Texas, 596, distinguished.  (Pp. 66, 67).

**10.—Prescriptive Rights—Conveyance.**

A deed to land passed with it the prescriptive rights of the grantor to the use of water, though these were inchoate only, the prescription being not then matured by completion of the period of adverse use required therefor.  (P. 67).

**11.—Prescription—Statute—Consent—Presumed Grant.**

The presumed grants underlying prescriptive rights necessarily include consent of the party against whom they are presumed; and their acquisition by an upper as against a lower riparian owner was not precluded by the Irrigation Act of 1895 (Laws 24th Leg., p. 21).  Such Act did not repeal the Statute of Limitation of four years against the latter's action for diversion, nor the law of prescription in suits involving the rights of private riparian owners. (Pp. 67, 68).

**12.—Peremptory Charge Unwarranted.**

The pleadings by defendants, upper riparian proprietors asserting limitation and rights by prescription against the action of lower proprietors for diversion to their prejudice, and for other than domestic purposes, of the flow of a running stream, and the evidence in support of such pleadings are held sufficient to render erroneous an instruction peremptorily disallowing such claims.  (Pp. 62-68).

Error to the Court of Civil Appeals for the Fourth District, in an appeal from Kinney County.

Burr and others sued Martin and others and recovered judgment. Defendants appealed, and on affirmance (171 S. W., 1044) obtained writ of error.

*Baker, Botts, Parker & Garwood, Jones & Thurmond, Boggess & Smith,* and *W. B. Teagarden,* for plaintiffs in error.—In this case appellants, and each of them, had, if not as matter of law, at least by substantial, competent and cogent evidence, sustained every issue necessary to establish their right to use the water from the stream in question for the purposes and to the extent asserted in their pleadings, and were at least entitled to a jury trial of the issues, hence it was error to instruct a verdict against them.  Art. 5675 (3343), Rev. St. of Texas (McEachin); Cape v. Thompson, 21 Texas, 600, 53 S. W., 372; Watkins Land Co. v. Clements, 98 Texas, 584, 86 S. W., 736, 70 L. R. A., 964; Hall v. Carter, 77 S. W., 19; Haas v. Chousard, 17 Texas, 588-593; Baker v. Brown, 55 Texas, 377; Weil's "Water Rights in the Western States," 3rd Ed., Vol. 1, p. 628, Sec. 582 to p. 639, Sec. 590, inc.; Alta, etc., Co. v. Hancock, 20 Am. St., 217; 93 Am. St. Rep., 217 (Note); Hesperia, etc., Co. v. Rogers, 17 Am. St. Rep., 209.  That any diversion to non-riparian land is an invasion of right of lower riparian owner:  Clements v. Watkins, (Civ. App.), 82 S. W., 665; Weil's "Water Rights in the Western States," p. 862, Sec. 815, p. 864, Sec. 816, and cases cited in footnotes, p. 870, Sec. 819; Harris v. Railway, 69 S. W., 623, 62 Am. & Eng. R'y Cases, N. S., 29 to 33; Eliott on Railroads, Sec., 977; Eliott

v. Railroad, 10 Cush. (Mass.), 191, 15 Am. Dec., 86; Fay v. Salem Railroad, 111 Mass., 27; Penn. Railway v. Miller, 112 Pa., 34, 4 Atl. 780; Stock v. Hillsdale, 155 Mich., 375, 119 N. W., 435; Cyc., Vol. 40, p. 698, Sec. (V), and cases cited in Notes 60 and 61; Porter v. Pentengill, 110 Pac. 393; Farmers Co-op. Ditch Co. v. Riverside Irrig. Dist., 16 Idaho, 525, 102 Pac. 481; Whited v. Cavin, 55 Or., 58, 105 Pac. 396; Union Mill Co. v. Ferris, 2 Sawyer, 196, 26 Fed., Cases No. 14, 371; Gould on Waters (3rd Ed.) Sec. 214; Haas v. Chousard, 17 Texas, 588; Smith v. Corbett, 116 Cal., 587, 48 Pac. 725. The strict rule of the common law was that no amount of water that would perceptibly reduce the flow of the stream could be lawfully appropriated, even by a riparian owner. This rule should apply now, and everwhere, as against a non-riparian user, like Martin, and against a riparian owner who appropriates and uses for other than irrigation or domestic purposes—that is, for commercial purposes. If this rule is applied, then all such uses are wrongful and adverse, *ad initio.* Fuller v. Mfg. Co., 16 Gray (Bigelow, C. J.) 43.

If the water in a stream, in the absence of special rights, is the common property of all riparian landowners, and subject to be used for irrigation and domestic purposes, each in his just proportion, then should the claim at any time arise that one is exceeding his right, this would be an issue of fact necessarily, unless the amount he is entitled to, and the amount actually taken, is shown beyond peradventure. If it is not so settled as matter of law, then many conditions must be considered in determining the question, including the number of acres of land each riparian owner has on the stream— whether in cultivation or not, and his needs for domestic uses strictly. Wiggins v. Land Co., 113 Cal., 182, 45 Pac. 160; Smith v. Corbett, 116 Cal., 587, 48 Pac. 725; McCook Irrig. Co. v. Crews, 70 Neb. 109, 96 N. W., 996; Union Mill Co. v. Danberry, 81 Fed., 73.

Actual and present damage need not be shown in order to support an action for any extraordinary and unreasonable use of the water by a riparian owner when the act complained of, if continued, would bar plaintiff's right. Gould on Waters, 3rd Ed., Sec. 214; Haas v. Chousard, 17 Texas, 588.

*Murray & Murray,* for defendant in error, Burr. *John J. Foster* and *Lewright & Douglas,* for defendant in error, Moore.—None of the plaintiffs in error pleaded or proved that the lands belonging to defendants in error were owned by persons who were free of legal disabilities and capable of making conveyance thereof at the inception or during the running of the prescriptive period of user relied on by plaintiffs in error, and plaintiffs in error therefore cannot recover upon a presumed grant (the basis of a prescriptive right) to them-

selves. Martin v. Burr, 171 S. W., 1044; Callan v. Walters, 190 S.
W., 829; Dees v. Harrison, 95 S. W., 1093; Wright v. Farming, 86
S. W., 786; 31 Cyc., 1165, and note 57, p. 1176; Evans v. Scott, 37
Texas Civ. App., 373; 14 Cyc., 1145, 1153; 3 Farnham on Waters, sec.
915; 2 Corpus Juris, 264; 16 Cyc., 1051.

The burden was upon plaintiffs in error to plead and prove the
taking of a definite quantity of water for a specific purpose for the
whole of the prescriptive period, as the basis for a judgment in their
favor, and not having done this they are in no position to complain
of the judgment in favor of defendants in error, whose rights were
unquestioned except through the alleged prescriptive rights of plain-
tiffs in error. 40 Cyc., 700; Watson v. Lawson, 135 Pac., 961;
Cheda v. Southern, 134 Pac., 717; Sorenson v. Norell, 135 Pac.,
119; Walsh v. Wallace, 67 Pac., 914; 14 Cyc., 1154; Big v. Shurtliff,
164 Pac., 856, 3 Kinney, sec. 1155.

It cannot be said that the use made of the water by plaintiffs
in error was adverse to the right of defendants in error to flowing
water for domestic purposes, because it does not appear that there
was any continuous invasion of the right of defendants in error, in
that they were not deprived of flowing water over their lands ex-
cept in years of drought, and the undisputed testimony shows that
the water ran continuously through the lands of defendants in error
throughout the years 1904, 1905, 1906, 1907 and 1908 (plaintiffs in
error relying upon a showing of ten years' adverse user preceding
February, 1912, of *all* of the water in the Las Moras.) Last Chance
v. Heildron, 26 Pac., 523; 2 Kinney, sec. 1039, 1050; 3 Kinney,
sec. 1613; 40 Cyc., 608; Kilpatrick v. Frenchman, 162 N. W., 422;
Wood on Limitation (3rd Ed.), p. 416; Logan v. Williams, 167 S.
W., 124; White v. McNabb, 131 S. W., 1021; Biggs v. Leffingwell,
132 S. W., 902; Biggs v. Miller, 147 S. W., 632; Biggs v. Lee, 147
S. W., 709; Lakeside Irrigation Co. v. Kirby, 166 S. W., 715; Live
Stock Co. v. Booth, 36 Pac., 431; Stratton v. Hermans Boys' School,
103 N. E., 87; Elliott v. Fitchbury, 57 Am. Dec., 85; Kinney on
Irrigation and Water Rights (Second Edition), Sec. 1606, also Sec.
1612; San Joaquin, etc. Co. v. Fresno, etc. Co., 112 Pac., 182; St.
Martin v. Skaniaina Boom Co., 140 Pac., 355; Weil on Water Rights
in Western States, Sec. 588, 822; San Juan Ditch Co. v. Casin, 141
S. W., 815; Featherstone v. Hemingway, 113 Pac., 751; Fifield v.
Spring Valley Water Works, 62 Pac., 1054; Boyce v. Cupper, 61
Pac., 642; Anaheim Water Co. v. Semitropic Water Co., 30 Pac.,
623; Carson v. Hays, 65 Pac., 814; Brossard v. Morgan, 61 Pac.,
1031; Brel v. Wheeler, 61 Pac., 782; Clark v. Ashley, 82 Pac., 588;
Oneto v. Restano, 20 Pac., 743.

Plaintiffs in error having relied upon the appropriation of waters
for use upon non-riparian lands, and also for excessive use upon

riparian lands, and their asserted right having had its inception after the Acts of 1895 (p. 25, Art. 4991 of 1911 statutes and 3115 of 1895 statutes) went into effect, and said statute having treated the subject of the taking of unappropriated waters from running streams and thereby furnishing an exclusive method for such appropriations, are in no position to claim the benefits of said alleged appropriations because of the entire absence of pleading and proof showing a compliance with the provisions of the statute authorizing such appropriations.   2 Lewis' Sutherland, Statutory Construction, sec. 633.

Before an excessive use of water will pass as an appurtenance to land it must have ripened into ownership by prescription: 2 Kinney, Waters, etc., secs. 1008 and 1010; 40 Cyc., 755, 756; McCoy case, 155 N. W., 995; 2 Farnham on Waters, sec. 471-b, p. 1598; Custer v. City, 156 Pac., 1090.

MR. JUSTICE GREENWOOD delivered the opinion of the court.

The parties to this suit are the owners of lands adjacent to Las Moras Creek, which is a running stream in Kinney and Maverick Counties.   Defendants in error are the two lowest riparian owners. Plaintiffs in error are upper riparian owners.

The suit was instituted by defendants in error against plaintiffs in error.   Its purpose was to establish the rights of defendants in error to running water in the creek on their lands, for domestic use, including the watering of livestock, and to enjoin plaintiffs in error from interfering with such right by the application of the water to irrigation and to railroad operation.   The defendants in error obtained a judgment in the trial court, substantially granting them the relief they sought, based on a verdict in obedience to a peremptory instruction, which was affirmed on appeal.   171 S. W., 1044.

It is the law of this State that upper riparian owners cannot lawfully use the waters of a flowing stream for irrigation, when such use materially interferes with the supply required to meet the reasonable domestic needs of lower riparian owners, including water for stock.   Baker v. Brown, 55 Texas, 380; Watkins Land Co. v. Clements, 98 Texas, 585, 70 L. R. A., 964, 107 Am. St., 653, 86 S. W., 733.   The decisions are uniform in holding that a riparian proprietor cannot rightfully take water in the operation of a railroad in such quantities as to materially reduce the volume of a stream to the detriment of lower riparian proprietors.   Harris v. Norfolk & W. Ry. Co., 153 N. C., 542, 69 S. E. 623, 138 Am. St., 686, 31 L. R. A. (N. S.), 543 and note.   We approve these decisions as correct in principle.

The application of the stated rules of law to the facts plead and proven entitled defendants in error to the peremptory charge in

their favor, unless their action was barred by limitation, or unless plaintiffs in error had acquired, by prescription, rights in and to the use of the water superior to the rights of defendants in error.

For answer to the causes of action of defendants in error, it was averred by plaintiffs in error, except the G. H. & S. A. Ry. Co., that they and their predecessors in title had had the adverse, peaceable, and continuous use of the water of Las Moras Creek, for irrigation of certain lands, by means of dams and ditches, for more than ten years before the filing of this suit; and, said plaintiffs in error prayed judgment in reconvention establishing their paramount right to the use of the water not only for domestic but for irrigation purposes. For answer to the petition of defendants in error, the G. H. & S. A. Ry. Co., plead an adverse, peaceable, and continuous use of the water from Las Moras Creek, for its locomotives, by means of pumping plants and tanks, throughout more than thirty years; and, the Railway Company sought judgment establishing its paramount right to the use of the water in the operation of its railroad. There was evidence that plaintiffs in error, or that plaintiffs in error and their predecessors in title, had remained in the adverse, peaceable, uninterrupted, actual, open, notorious, and exclusive use and enjoyment of the water of Las Moras Creek, for irrigation of the lands described and for the operation of the railway company's locomotives, during more than ten years before this suit was brought.

Defendants in error contend that the action of the trial court in refusing to submit to the jury the defense of either limitation or prescription ought to be sustained, for the following reasons:

1st. Because it was not made to appear that plaintiffs in error or their predecessors had any continuous, adverse use of the water: no continuous invasion of the rights of defendants in error or of those under whom they claim being shown, and no knowledge or notice, actual or constructive, to defendants in error and those under whom they claim, of the alleged hostile use of the water by plaintiffs in error or their predecessors being proven.

2nd. Because plaintiffs in error did not plead nor prove that the owners of the riparian lands, which now belong to defendants in error, were free from legal disabilities at the inception of, or during, the period relied on for the acquisition of prescriptive rights.

3rd. Because certain of the plaintiffs in error were not in privity with their predecessors in title with respect to any prescriptive claim, by reason of the fact that no prescriptive right had ripened when those plaintiffs in error purchased, and they took no express conveyance of any inchoate right founded on an incomplete prescriptive use of the water, and they had not themselves used the water for as long as ten years.

4th. Because since the act of 1895 no right could be acquired in the unappropriated waters of any natural stream save by compliance with the provisions of the act.

We think the facts averred by plaintiffs in error, in answer to the defendants in error's petition, presented the defense of limitation of four years, notwithstanding deficiencies rendering the pleading of that defense subject to special exceptions, which were not urged. We also think that plaintiffs in error were entitled to have the jury determine whether defendants in error's action was barred by the four years statute of limitations.

The conclusion last stated involves the determination that article 5690 of the Revised Statutes applies to defendants in error's suit. The article provides that "every action other than for the recovery of real estate, for which no limitation is otherwise prescribed, shall be brought within four years next after the right to bring the same shall have accrued, and not afterward." Since "no limitation is otherwise prescribed," the article is bound to apply if this is an "action other than for the recover of real estate."

This court has repeatedly defined an action for the recovery of land. Speaking through Justice Wheeler, the court said in Miller v. Rush, 17 Texas, 171: "The recovery of land manifestly has reference to the possession." The same year, it was said in Hearst v. Kuykendall, 16 Texas, 329, by Chief Justice Hemphill. "An action for the recovery of lands has a well known and definite signification, and means an action for ejectment, trespass to try title, or a suit to recover the land itself." Those declarations have been repeatedly cited with approval. Thompson v. Locke, 66 Texas, 386; 1 S. W., 112; McCampbell v. Durst, 15 Texas Civ. App., 522, 40 S. W., 319.

Thompson v. Locke, supra, decided that a suit to quiet the title to real estate was not an action for the "recovery of land."

This suit is one to quiet the right of the two lowest riparian proprietors to the use of the flowing water of Las Moras Creek for domestic purposes, and to enjoin interference therewith, and, therefore, could not be considered as one "for the recovery of real estate," though the asserted riparian right should be regarded as part and parcel of the land itself.

There is good reason for the view that this suit is one to quiet title to an incorporeal hereditament. Cooley's Blackstone, 3rd Ed., Vol. 1, p. 331; 1 Kinney on Irrigation and Water Rights, secs. 454, 455. It has been pointed out in an opinion of Chief Justice Stayton that actions of the kind included in Chief Justice Hemphill's definition in Hearst v. Kuykendall do not lie for an incorporeal thing. Benavideas v. Hunt, Trustee, 79 Texas, 390, 15 S. W., 396. Referring to various English statutes, it was said in Lehigh Valley Railroad

Co. v. McFarlan, 43 N. J. L., 605, 617: ''These statutes applied only to actions for the recovery of land; none of them embraced actions in which the right to an incorporeal hereditament was involved.''

It is significant that none of the articles in Chapter 1, of Title 87, of the Revised Statutes, entitled ''Limitation of Actions for Land,'' have application to defendants in error's suit. Full title, precluding all claims, cannot be acquired under the three, five or ten years statutes, without ''peaceable and adverse possession.'' Such rights as defendants in error assert and seek to protect cannot be made the subject of ''actual and visible appropriation'' by a hostile claimant, which is essential to ''adverse possession.'' Articles 5672, 5674, 5675, 5679, 5681 R. S.

The right of defendants in error, or of those under whom they claim, to maintain a suit to quiet their riparian rights, and to prevent wrongful interference therewith, accrued whenever upper riparian proprietors diverted water, for irrigation or for locomotives, to such an extent as to deprive defendants in error or those under whom they claim of water for domestic use, to their substantial injury. Until defendants in error or those under whom they claim suffered substantial injury, no right of action in their favor accured. The action became barred four years after the accrual of the right to bring same.

Whether the pleadings and evidence raised the defense of the bar of defendants in error's suit, by limitation, is a distinct question from whether the court ought to have submitted to the jury the case which plaintiffs in error sought to affirmatively make against defendants in error, based on alleged paramount rights to the use of the water of Las Moras Creek, acquired by prescription.

It is not an open question in Texas that an upper riparian proprietor may, by prescription, acquire the right to use the water of a running stream, in a special way and in excess of the right arising from ownership of his land, to the injury and detriment of lower riparian proprietors. And, the time to perfect such a right by prescription is ten years. Haas v. Choussard, 17 Texas, 590; Rhodes v. Whitehead, 27 Texas, 312, 315, 84 Am. Dec., 63; Baker v. Brown, 55 Texas, 381; Mud Creek Irrigation etc. Co. v. Vivian, 74 Texas, 174, 11 S. W., 1078; Cape v. Thompson, 21 Texas, Civ. App., 689, 53 S. W., 368; Santa Rosa Irr. Co. v. Pecos River Irr. Co. 92 S. W., 1016.

We do not agree with the view that there was no evidence to take to the jury the question of such adverse or continuous use of the water as is requisite to establish a right by prescription.

While prescription does not begin to run until the party against whom the prescriptive right is claimed has notice, and no actual notice to the lower riparian owners, of the claim of paramount right

by plaintiffs in error or those under whom they claim, was shown; yet, there was evidence of circumstances from which notice might have been reasonably presumed; and constructive notice has the same effect as actual notice. Gould on Waters, sec. 337.

We cannot hold that the evidence furnished no basis for the determination of the extent of the use of the water, throughout ten years, for irrigation or for locomotives. If the pleadings, with respect to prescription, were defective for lack of greater certainty, the defects rendered same merely subject to special exceptions. There were no such defects in pleading the prescriptive rights relied on by plaintiffs in error as authorized the peremptory instruction.

We think the rule as to continuity in the use of water, which is laid down by Mr. Kinney is consonant with sound reason. He says: "The adverse user only during the season when the water is needed constitutes a sufficient continuous user of either the water or the easement used in connection therewith, as the omission to use the water when it is not needed by the claimant does not break the continuity of the user as far as acquiring a right by prescription is concerned. Water for irrigation, for example, is not needed at all seasons of the year; and, again, it may not be needed every day of the irrigation season. In general, it may be said that the right to its use may be acquired adversely, as it may be acquired by appropriation by periods of time. If whenever the claimant needs the water from time to time, he makes use of it, whether the use be every day, or once every week, or twice a month, or whenever his needs require tit, this is a continuous use." 2 Kinney on Irrigation and Water Rights, sec. 1052, p. 1890.

The rule is laid down by Greenleaf as follows: "So, proof of the exercise of the right whenever the party had occasion to do so, as, for example, the right to take clay to make bricks, is sufficient, without showing that it was in fact exercised at all times of the year, though it is so alleged in the plea." 2 Greenleaf on Evidence, 16 Ed., sec. 544, p., 511.

It was not incumbent on plaintiffs in error, in order to make out a prima facie cause of action entitling them to a decree adjudging the superiority of their right to the use of the water, to the extent enjoyed during the full period of prescription, to plead or prove that defendants in error and those under whom they claim were free from disabilities at the commencement of, or throughout, the prescriptive period.

The law authorizes the presumption of a grant from the enjoyment of an incorporeal right which affects the lands of others where such enjoyment has been, for the whole prescriptive period, adverse, peaceable, and continuous, with actual or constructive notice to the persons whose rights are invaded. The presumption of a grant, to

divest one of a right and to invest it in another, involves a grantor *sui juris.*

The Supreme Court of New Hampshire said in Wallace v. Fletcher, 30 N. H., 452: "In cases where the party claiming title under such presumption may find it necessary to rely upon the presumption of a deed, we think that long continued user is evidence of a lost or non-existing grant from some person who might, at some time, have made a valid grant to some person capable of accepting it."

Of like tenor was the declaration of the Supreme Court of the United States, per Justice Field in Fletcher v. Fuller, 120 U. S., 545, 30 L. Ed., 759, 7 Sup. Ct., 673: "When, therefore, possession and use are long continued, they create a presumption of lawful origin, that is, that they are founded upon such instruments and proceedings as in law would pass the right to the possession and use of the property."

The prescriptive period was fixed by analogy to our statutes of limitation and the analogy should continue with respect to pleading and proof of disabilities on the part of owners to be affected. We may be sure that this rule puts the burden of proof on those who will ordinarily have least difficulty in adducing the facts.

The conclusion in City of Austin v. Hall, 93 Texas, 596, 57 S. W., 563, that a plaintiff should prove that those from whom he claimed to have derived a prescriptive right were free of disability, was based explicitly on the statement that the right was claimed against one other than the defendant in the suit or some person under whom he claimed. To prevent that opinion from being construed to announce the principle contended for in behalf of defendants in error, Judge Brown was careful to say that the court did "not intend to decide what would be the rule if a prescriptive right were claimed as against the defendant in the suit or some person whose title he asserts."

In our opinion, plaintiffs in error connected themselves with any prescriptive claims of their predecessors in title by means of the deeds to their lands. It is not denied that the deeds would have passed matured prescriptive rights, apurtenant to the lands, any more than it would be denied that the inchoate title or claim of an adverse possessor, without lawful right, would pass by his deed to the land possessed. It seems manifest that it could not be the intent of the grantor and grantee that the grantor's deed to land together with all rights and appurtenances thereto should not pass that which the grantor claimed as an appurtenant right to the land. Here too we conclude that the analogy to the statutes of limitations should be followed.

The contention that the act of 1895 precluded the acquisition of prescriptive rights to land by upper as against lower riparian pro-

prietors seems sufficiently refuted by the act's express authorization of the diversion of running water "to the prejudice of the rights of the riparian owner" by his consent. The presumed grants underlying prescriptive rights necessarily include consent.

The act did not repeal the statute of limitation of four years or the law of prescription, in suits involving the rights of private riparian owners.

The peremptory charge against plaintiffs in error ought not to have been given. The judgments of the Court of Civil Appeals and of the District Court are reversed, and the cause is remanded for a new trial in the District Court.

*Reversed and remanded.*