VALMONT PLANTATIONS ET AL, Petitioners
V.
THE STATE OF TEXAS ET AL, Respondents

No. A-8465.  Decided February 14, 1962
Rehearing Denied April 11, 1962
355 S.W. 2d 502

ASSOCIATE JUSTICE GRIFFIN, dissenting.

*A. J. Vale, Pope & Pope, F. Randall Nye,* Rio Grande City, *L. Hamilton Lowe,* Austin, for Valmont Plantations et al.

*Ransome & Ray,* Brownsville, *Cunningham, Yznaga & Duncan,* Brownsville, for R. F. Breeden et al.

*Strickland, Wilkins, Hall & Mills,* Mission, for W. L. Pickens, Trustee, et al.

*Strickland, Wilkins, Hall & Mills,* Mission, for Everett Bell et al.

*Will Wilson,* Atty. Gen., Austin, *Houghton Brownlee, Jr.,* Assistant, *Wayland Rivers,* Spec. Asst., *Kent, Brown & George,* Harlingen, *A. G. Haigh,* Edinburg, *Gibbon, Klein & Ferrero,* Harlingen, *Truett Hubbard,* Donna, *J. D. Vollmer,* Mercedes, *Smith, McIlheran & Jenkins,* Weslaco, *Kelley, Looney, McLean & Littleton,* Edinburg, *Vinson, Elkins, Weems & Searls,* Houston, *Sawnie B. Smith,* Edinburg, *Robertson, Jackson, Payne, Lancaster & Walker,* Dallas, *Hill & Kin,* Mission, for State of Texas et al.

*E. H. Moore,* LaFeria, for other respondents.

ASSOCIATE JUSTICE ROBERT W. HAMILTON delivered opinion of the Court.

This is a suit between appropriators and riparians. It is a class action to determine whether, in the absence of specific grants of irrigation waters, Spanish and Mexican grants along the Rio Grande River have appurtenant riparian irrigation rights.

The State and numerous water districts assert rights of the appropriators, and the owners of lands out of the original grants assert rights similar to those commonly called riparian rights.

The trial court held that although it was of the opinion that the grants did not carry with them riparian rights of irrigation, it was bound by the case of Motl v. Boyd, 116 Texas 82, 286 S.W. 458, and held that the grants along the lower Rio Grande did carry with them the implied rights of irrigation.

■ The Court of Civil Appeals reversed the judgment of the trial court and rendered judgment for the appropriators, hold-

ing that the original Spanish and Mexican grants in question did not carry with them implied rights of irrigation. 346 S.W. 2d 853. In so holding that court determined that statements made by way of dicta in Motl v. Boyd to the contrary were not stare decisis of the question. We affirm.

■ The opinion of Mr. Justice Pope of the Court of Civil Appeals is exhaustive and well documented. We believe it would serve no good purpose to write further on the subject other than to point out that the question of the binding effect of certain statements contained in Motl v. Boyd presents a different problem when applied to a Court of Civil Appeals than it does when applied to this Court. The dissent of Chief Justice Murray is largely based upon the proposition that the Court of Civil Appeals is bound to follow the dicta contained in Motl v. Boyd, which he regards as being judicial in nature. We find text statements which are similar in purport to the thesis asserted by the Chief Justice. It is pointed out in Corpus Juris Secundum that:

"It is commonly held that a decision is authoritative only on questions which it was necessary to decide, and were involved, or in issue, in the case. However, inferior courts have been held bound by a decision on a question actually determined by an appellate court even though the decision thereof was not necessary to the determination of the case." 21 C.J.S., Courts, Sec. 190, p. 382.

See also, 21 C.J.S., Courts, Sec. 209, p. 316, as to statements made by way of dicta for the guidance of lower courts.

With the granting of the writ of error in this case the question of whether the Court of Civil Appeals should have followed the dicta of Motl v. Boyd became academic. The question now relates to the action which should be taken by this court with reference to such dicta. When we apply the reasoning of Mr. Justice Pope relating to the doctrine of stare decisis (346 S.W. 2d 878) to the Supreme Court, the answer is inescapable. Such dicta should not control our disposition of this case. In Vidal v. Girard's Executors, 2 How. 127, 11 L. Ed. 205, the Supreme Court of the United States (opinion by Mr. Justice Story) reexamined a point of chancery jurisdiction as "strong additional light had been thrown upon the subject" through historical research.

As further discussion is unnecessary it will be pretermitted. The judgment of the Court of Civil Appeals is affirmed and the

opinion of that court is adopted as the opinion of the Supreme Court.

Opinion delivered February 14, 1962.

GRIFFIN, JUSTICE, dissenting.

After diligent search of the authorities I am by no means convinced that the Spanish and Mexican law is as declared by the majority opinion. In fact, I find that the commonly accepted practices of those colonizing the lower Rio Grande Valley demonstrate that since the 1700's riparian owners have had the right to use the waters of the Rio Grande to irrigate their lands. Irrigation was a necessity if the colonists were to exist and prosper. Since this right has so long been recognized, I would follow that branch of the Spanish and Mexican law which gives the right of irrigation to the riparian owner.

The decision in Motl v. Boyd, 116 Texas 82, 286 S.W. 458 (1926) established a well recognized rule of property under which many millions of dollars have been invested in riparian lands in the lower Rio Grande Valley. That case reiterated and affirmed what had been the previous announcement of this court regarding the rights of riparian owners. With but one exception, all acts of the Legislature pertaining to riparian rights, beginning with 1889 and continuing to date, have specifically recognized and protected the rights of riparian owners.

It is a grave mistake to hold that the pronouncements in Motl v. Boyd are only *obiter dicta* rather than judicial dicta. This court in that case (p. 463) said that it was strongly urged on the court to deny the applicability of the doctrine of riparian rights to natural or statutory navigable streams. The Court said: "* * * This course is insisted on with so much force and so earnestly that we have concluded to investigate the whole subject *for the purpose, if we can, of ascertaining the rule applicable in this state,* and of harmonizing our statutes and decision *and setting at rest, in so far as we can, the question involved."* (All emphases throughout this opinion are mine unless the contrary is shown.) Then after a thorough discussion of the writing and the authorities this court said, (p. 465) : "* * * In view of what we have cited from Hall's Mexican Law, we believe we are clearly warranted in saying that, in so far as the Mexican law in Texas is concerned, it was one which distinctly recognized the rights of riparian owners of land," which includes the right to irrigate their crops.

In discussing the Act of January 20, 1940, adopting the common law as the rule of decision, the court said, (p. 466): "In so far as colonization grants were concerned, this act of the Republic was a distinct recognition of the laws under which the grants were made, and a declaration by the Republic of Texas that these grants and the rights thereunder would be recognized and carried forward under the laws under which they were made, included in which were, we have seen, *the rights of riparian owners.*"

Summarizing its holding in that cause the court says:

"* * * On the whole, we think it proper to say that from the Mexican decree of 1823 down to the passage of our appropriation act in 1889, the fixed policy of this state, under all of its several governments, that of Mexico, Coahuila and Texas, Tamaulipas, and the Republic and state of Texas, was to recognize the right of the riparian owner to use water, not only for his domestic and household use, but for irrigation as well.

"What we have thus far said has been predicated upon the history of the subject, and an interpretation of the laws, decrees, and the acts involved. The construction, however, is in harmony with the decisions of this court, which appear to us to have settled the question that riparian rights to the use of the waters of the streams of the state for irrigation purposes were a part of the grants of land when the grants were made. Watkins Land Co. v. Clements, 98 Texas 578, 86 S.W. 733, 70 L.R.A. 964, 107 Am. St. Rep. 653; Board of Water Engineers v. McKnight, 111 Texas 82, 229 S.W. 301; Martin v. Burr, 111 Texas 57, 228 S.W. 543."

This is a clear and direct holding by this Court that riparian owners had the right to use the waters of a stream for irrigation purposes prior to the appropriation act of 1889.

The holding in Motl v. Boyd which declared that riparian owners had a *vested right* to use the water from the stream for irrigating their crops was recognized and affirmed in the cases of Chicago, R. I. & G. Ry. Co. v. Tarrant County Water Control & Improvement Dist. No. 1, 123 Texas 432, 73 S.W. 2d 55(9), (1934) and Heard v. State, 146 Texas 139, 204 S.W. 2d 344 (1947). Thus we see that the principle of the rights of riparian owners to use the stream waters to irrigate as set out in Motl

v. Boyd in 1926 has been unquestioned by this Court. It has become and is a rule of property, and I would not overrule it.

The majority decision creates confusion and uncertainty and results in a lack of uniformity of rights as between landowners on the same stream as well as on different streams. The majority recognizes in principle the rights of riparian owners holding under common law grants to use stream waters for irrigation. Many of our longer streams in Texas have on their banks both common law and civil law grants. The rights should be the same, and by following what has been the law up to this decision these grants would continue to have and possess the same rights thus maintaining uniformity. The majority decision creates an impractical patchwork of law applicable along most of our major streams rivaling Grandma's quilt for variety.

The most serious objection to the majority opinion is that it creates an uncertainty as to what the laws are at the present time, although prior cases have unequivocally set forth rules and principles of law. How can an attorney advise his clients with any certainty as to the client's rights? Here the majority overthrows a solemn declaration of law set forth in clear and unambiguous language in Motl v. Boyd in 1926. What attorney can afford to advise his clients in the face of clear declarations establishing a rule of property that such declarations are not the law, but *obiter dicta* and not binding? The responsibility of this Court is to maintain a consistent interpretation of the law, as well as to render justice in its decisions. The confidence of the people of Texas is not to be treated lightly, nor the legal profession put in doubt as to the lasting effect of a particular holding.

This Court said in Southland Royalty Co. v. Humble Oil & Refining Co., 151 Texas 324, 249 S.W. 2d 914, 916 (1952):

"It may be noted here that respondents suggest a re-examination of the Parker and George cases on the theory that the courts should not attribute to lessors jointly executing a general form lease, without more, an intent to pool or unitize their properties; that the language of the general form lease was never intended to effect or to operate as a pooling agreement. This argument is not entirely unappealing. The Texas rule in this respect is not of universal application. See 116 A.L.R. 1267, et seq. *On the other hand, the law of the Parker and George cases have now become a rule of property in this state and should not be changed in the absence of other controlling circumstances, even though good reasons might be*

*given for a different holding.*' Tanton et ux v. State National Bank of El Paso et al., 125 Texas 16, 79 S.W. 2d 833."

In Thomas v. Meyer, Texas Civ. App., 1932, 168 S.W. 2d 681, 685, no writ history, it is said:

"It seems more probable to assume that the holdings upon the point here involved were deliberately made for the guidance of the bench and bar upon a point of statutory construction not theretofore considered by the Supreme Court. It, therefore, seems that these holdings must at least be considered as judicial dicta rather than mere obiter. * * *"

The lower Rio Grande Valley has attained its present state of development under the rights of riparians to use the flow of that stream to irrigate their fertile fields and orchards. It should be allowed to continue to develop under such rights, subject to the recognized rights of the court to prorate the water in times of extreme drought.

I would not overthrow the accepted practices and understanding of the rights of riparian owners which have been generally accepted for nearly 200 years.

For an academic discussion on this matter see "The Texas Law of Flowing Waters with Special Reference to Irrigation from the Lower Rio Grande", Davenport & Canales, Baylor Law Review, Vol. VIII, No. 3, p. 283; The Development of the Texas Law of Water, Vol. 21, Vernon's Annotated Texas Civil Statutes.

I would reverse the judgment of the Court of Civil Appeals and affirm the trial court's judgment.

Opinion delivered February 14, 1962.