Hilary GARDNER, Appellant,

v.

BEST WESTERN INTERNATIONAL, INC., Appellee.

No. 06–96–00009–CV.

Court of Appeals of Texas, Texarkana.

Submitted July 9, 1996.

Decided Aug. 7, 1996.

Rehearing Overruled Sept. 4, 1996.

Lynn A. Grisham, Waltman & Associates, Shane M. Sanders, Bryan, for Appellant.

Don Martinson, Alan Powers Moore, Sharis Lea Hauder, Fanning, Harper, Martinson, Dallas, for Appellee.

Before CORNELIUS, C.J., and GRANT and STARR, JJ.

## OPINION

CORNELIUS, Chief Justice.

The question in this summary judgment appeal is whether the law of the state of Quintana Roo, Mexico, provides a cause of action to an injured hotel guest against a nonprofit marketing association that contracted to provide quality control inspections for the hotel. We conclude that the law does provide a cause of action in some circumstances, and we therefore affirm the take-nothing summary judgment in part and reverse and remand in part.

Hilary Gardner, a resident of Scotland, was a guest at the Hotel Playa Blanca in Cancun, Mexico. On September 12, 1990, while diving into the hotel swimming pool, she hit her head on the bottom, causing her permanent and paralyzing injuries. She alleges that because the pool was marked as being 4-½ feet deep but was actually only 2-½ feet deep, it was maintained in a dangerous condition.

Hotel Playa Blanca is independently owned and operated in the state of Quintana Roo, Mexico. Best Western International is a nonprofit association of independently operated hotels throughout the United States and Canada. BWI operates as a cooperative marketing association providing reservation and marketing services to its members. Hotel Playa Blanca entered into a membership agreement with a Mexican company, Best Western de Mexico, which had signed a licensing agreement with BWI. The agreement provided that a BWI field representative would conduct quality control inspections of associated properties, including Hotel Playa Blanca.

The agreement allowed Best Western de Mexico to use BWI's trade names, trademarks, service marks, and membership marks "for the purpose of establishing a single international marketing identity of the availability of BWI type services to motels, hotels and resorts" in Mexico. The agreement allowed Best Western de Mexico to form an "Affiliate Organization" of at least fifteen lodging facilities, each of which had the right to use BWI trademarks, logos, and insignias. The agreement required each member of the affiliate organization to meet certain quality standards.

Gardner filed suit against several parties, eventually nonsuiting all parties except BWI, alleging negligence, gross negligence, strict liability, strict liability-misrepresentation, and certain statutory violations. Her principal allegation is that BWI failed to adequately inspect and ensure the safety of the Hotel Playa Blanca pool.

The trial court ruled that the substantive law of Quintana Roo applies to all issues of liability and damages. Neither party appeals that decision.

BWI moved for summary judgment October 25, 1994. It supported its motion by an affidavit from Javier Legarreta Matinez, a Mexican attorney, who said the law of Quintana Roo provided no cause of action to Gardner. Gardner filed her first amended petition and response to that motion on November 28, 1994. Her response included an affidavit from Ignacio Gomez–Palacio, an attorney practicing in Mexico City. On May

19, 1995, BWI filed its first amended motion for summary judgment to address new claims in Gardner's amended petition.

In its amended motion for summary judgment, BWI sought judgment on grounds that (1) BWI did not own, operate, or possess the Hotel Playa Blanca in September 1990, or at any other time; (2) BWI is not an individual capable of committing an "act of man" under the law of Quintana Roo; (3) BWI is not an individual "exercising a profession" under the law of Quintana Roo; and (4) the affiliation agreement and its addendum contain no express stipulations in favor of Gardner as a third-party beneficiary that would give rise to liability under C.C.Quintana Roo arts. 253 and 254. In BWI's second supplement to its first amended motion for summary judgment, it added another ground: no legal representative of BWI had conducted any inspection or review of the swimming pool at the hotel at the time of the incident.

Gardner filed a first amended response on July 14, 1995, with an affidavit from Stephen T. Zamora, a law professor and director of the International Law Institute at the University of Houston Law Center. The trial court scheduled the summary judgment hearing for July 21, 1995. On July 20, BWI filed an objection to the Zamora affidavit on grounds that (1) Gardner did not provide it as proof of foreign law thirty days before the summary judgment hearing pursuant to Tex. R.Civ.Evid. 203, and (2) Zamora was not a Mexican attorney and thus was not qualified. On July 21, the date of the hearing, Gardner filed her second amended petition, and BWI filed its first supplement to its first amended motion for summary judgment, which attached an affidavit from Mexican attorney Javier Navarro Velasco. BWI also filed objections to the Gomez–Palacio affidavit and a supplement to its objection to the Zamora affidavit on grounds that Gomez–Palacio and Zamora did not represent the facts contained

in the affidavits to be true and within the affiants' personal knowledge.

On July 26, 1995, BWI filed its second supplement to its first amended motion for summary judgment and a motion to shorten the time for Gardner's response to BWI's second supplement to its first amended motion for summary judgment. The court granted the motion and ordered Gardner to file her response by July 28. Also on July 26, Gardner filed a first amended affidavit from Zamora, in which he stated that the facts and statement in the affidavit were true and correct. On July 28, BWI moved to strike Gardner's second amended petition and Gardner filed her third amended petition. On July 31, BWI filed an objection to and a motion to strike Gardner's third amended petition and first amended Zamora affidavit, adding to the previously stated grounds that it was not at least seven days prior to the summary judgment hearing. On November 29, 1995, the court granted BWI's motion for summary judgment.

Before we consider whether Gardner has a cause of action under Mexican law, we must decide what remedies she pleaded.

BWI contends that we should consider only Gardner's first amended petition and should ignore her second and third amended petitions, which she filed after the seven-day cutoff period before the July 21, 1995 summary judgment hearing. Tex.R.Civ.P. 166a(c).[1] Gardner filed her second amended petition on July 21, the date of the hearing, and her third amended petition on July 28, a week after the hearing. In her first amended petition, Gardner relies on C.C.Quintana Roo arts. 87, 115, 119–VIII, 97 and 253. She did not claim a remedy under C.C.Quintana Roo art. 100 until her second amended petition, and did not seek relief under C.C.Quintana Roo arts. 96 and 254 until her third amended petition.[2]

1. Tex.R.Civ.P. 166a(c) says in part: "Except on leave of court, the adverse party, not later than seven days prior to the day of hearing may file and serve opposing affidavits or other written response."

2. Although under Texas procedural law, a plaintiff need not initially plead a Texas statute, see *Chicago, R.I. & G. Ry. Co. v. De Bord*, 109 Tex.

20, 192 S.W. 767, 769, *cert. denied*, 245 U.S. 652, 38 S.Ct. 12, 62 L.Ed. 532 (1917), 2 McDonald Texas Civil Practice § 7:12 (rev. 1992), Rule 203 of the Rules of Civil Evidence requires a party relying on the laws of a foreign country to give at least thirty days' notice before trial. In this summary judgment proceeding, however, BWI

Although BWI says Gardner did not raise Article 254 until the third amended petition, she raised the substance of Article 254 in her first amended petition, but simply failed to cite the article number until her third amended petition. Consequently, we conclude that Gardner raised claims under Articles 253 and 254, concerning third-party contractual rights, in her first amended petition.

A party may file amended pleadings within seven days of trial only with leave of the court. TEX.R.CIV.P. 63 [3]; *Goswami v. Metropolitan Sav. and Loan Ass'n,* 751 S.W.2d 487, 490 (Tex.1988). The judge shall grant leave unless the opponent demonstrates that the amendments will operate as a surprise. TEX.R.CIV.P. 63; *Goswami v. Metropolitan Sav. and Loan Ass'n, supra.* The trial court's action in considering an amended pleading may cure the failure to obtain leave, if there is no showing of surprise to the opposing party. *Goswami v. Metropolitan Sav. and Loan Ass'n, supra; Johnson v. Rollen,* 818 S.W.2d 180 (Tex. App.—Houston [1st Dist.] 1991, no writ). A summary judgment is a trial within the meaning of Rule 63. *Goswami v. Metropolitan Sav. and Loan Ass'n, supra.*

Here, BWI filed motions to strike Gardner's second and third amended pleadings, and according to a docket entry, the trial court denied the motions to strike. Moreover, the trial court specifically granted BWI's motion to shorten the time Gardner had to respond to BWI's second supplement to BWI's first amended motion for summary judgment and required Gardner to file her response by July 28. The trial court in its November 29, 1995 summary judgment order also stated that it had reviewed "the pleadings."

BWI argues that, because the trial court stated that it considered the "pleadings and the evidence submitted [with the first amended motion for summary judgment]," and that because the first amended motion for summary judgment referenced only the first amended petition, the trial court, in effect, was stating that it considered only the first amended petition. We do not read the court's order that narrowly. Moreover, the trial court denied the motions to strike. In those circumstances, we presume that the trial court considered the amended pleadings and that the failure to grant leave was cured.

Gardner contends that the trial court erred in granting summary judgment because (1) C.C.Quintana Roo arts. 87, 96 and 100 provide causes of action for her negligence; and (2) C.C.Quintana Roo arts. 253 and 254 provide her causes of action as a third-party beneficiary under the agreement between the hotel and BWI.

### Summary Judgment

A trial court may properly grant a summary judgment only when the movant establishes that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX.R.CIV.P. 166a(c); *see Swilley v. Hughes,* 488 S.W.2d 64, 67 (Tex. 1972). The movant for summary judgment has the burden of proof, and the court must resolve against the movant all doubts about the existence of a genuine issue of fact. *Roskey v. Texas Health Facilities Comm'n,* 639 S.W.2d 302, 303 (Tex.1982).

In deciding whether there is a disputed material fact issue precluding summary judgment, the reviewing court will take as true all evidence favorable to the nonmovant, and will indulge every reasonable inference and resolve all doubts in the nonmovant's

has the burden of proving Gardner has no cause of action under Quintana Roo's civil code.

3. TEX.R.CIV.P. 63 reads:

Parties may amend their pleadings, respond to pleadings on file of other parties, file suggestions of death and make representative parties, and file such other pleas as they may desire by filing such pleas with the clerk at such time as not to operate as a surprise to the opposite

party; provided, that any pleadings, responses or pleas offered for filing within seven days of the date of trial or thereafter, or after such time as may be ordered by the judge under Rule 166, shall be filed only after leave of the judge is obtained, which leave shall be granted by the judge unless there is a showing that such filing will operate as a surprise to the opposite party.

favor. *Nixon v. Mr. Property Management Co.*, 690 S.W.2d 546, 548–49 (Tex.1985).

A reviewing court cannot affirm a summary judgment on any ground not presented in the summary judgment motion. *Hall v. Harris County Water Control & Improvement Dist.*, 683 S.W.2d 863, 867 (Tex. App.—Houston [14th Dist.] 1984, no writ). When a trial court's summary judgment order does not specify the grounds relied on for its ruling, the reviewing court will affirm the judgment if any of the theories advanced is meritorious. *Insurance Co. of N. Am. v. Security Ins. Co.*, 790 S.W.2d 407, 410 (Tex. App.—Houston [1st Dist.] 1990, no writ).

A summary judgment is proper for a defendant if its summary judgment proof conclusively negates at least one essential element of the plaintiff's cause of action. *Goldberg v. United States Shoe Corp.*, 775 S.W.2d 751, 752 (Tex.App.—Houston [1st Dist.] 1989, writ denied).

### Foreign Law

Texas courts may apply Mexican law. *Gutierrez v. Collins*, 583 S.W.2d 312, 321 (Tex.1979). Evidence of foreign law may be presented by the opinions of skilled persons. *Apodaca v. Banco Longoria, S.A.*, 451 S.W.2d 945, 947 (Tex.Civ.App.—El Paso 1970, writ ref'd n.r.e.); *State v. Valmont Plantations*, 346 S.W.2d 853, 865 (Tex.Civ. App.—San Antonio 1961), *aff'd*, 163 Tex. 381, 355 S.W.2d 502 (1962).

A party raising an issue concerning foreign law must give notice in the pleadings or other written notice. TEX.R.CIV.EVID. 203. At least thirty days before trial, the party shall furnish all parties copies of any written materials or sources intended to be used as proof of the foreign law. *Id.* If the materials or sources were originally written in a language other than English, the party shall furnish all parties both a copy of the foreign language text and an English translation. *Id.* The court, in determining the foreign law, may consider any material or source, whether or not submitted by a party or admissible under the rules of evidence, including but not limited to affidavits, testimony, briefs, and treatises. *Id.* If the court considers sources other than those submitted by a party, it shall give all parties notice and a reasonable opportunity to comment on the sources and to submit further materials for review by the court. *Id.* The court, and not the jury, shall determine foreign law, and its determination is subject to review as a ruling on a question of law. *Id.*

Here, the parties in general agree about the content of the law, that is, the existence and wording of certain statutes. They disagree, however, about the meaning and legal significance of the statutes, and about the application of the statutes to the facts.

### Mexican Legal Reasoning

On the question of Mexican law, Gomez–Palacio, one of Gardner's experts, opined that the civil code of Quintana Roo regulates three types of liability: contractual liability; extracontractual liability, similar to tort; and objective liability, similar to strict liability. Gomez–Palacio and Zamora, Gardner's other legal expert, state that Mexico has a rather unitary legal system and that the laws of the various states track closely and are interpreted similarly to the Codigo Civil para el Distrito Federal (Civil Code of the Federal District), that is, the national code.

Zamora says that reliance on case law is not as important in Mexico as in a common-law jurisdiction and that Mexico does not follow the *stare decisis* rule. The Mexican Supreme Court may create binding rules, called *jurisprudencia obligatoria*, if it makes the same decision on similar facts in five consecutive cases. Moreover, he says, only the decisions of the federal appellate courts are published regularly. The decisions of state trial and appellate courts generally are not published and thus are not available for research, he says. Neither side argues that *jurisprudencia obligatoria* applies here.

Zamora says legal scholars concentrate on the federal code rather than on the individual state codes, and that judges use scholarly writings about the federal code in interpreting state codes. Moreover, he says, because the Mexican civil codes are based on the French civil code (Code Napoleon), Mexican scholars and commentators rely on authorita-

tive statements written by legal scholars in France, Argentina, Spain, and other countries with a civil law tradition.

Gomez–Palacio notes that C.C.Quintana Roo art. 20, which he says is similar to C.C.D.F. art. 19, gives instructions as to how courts are to interpret the statutes. The article says:

Judicial controversies of a civil nature shall be decided in accordance with the letter of the law and its juridical interpretation and in the absence of law, they shall be decided in accordance with general legal principles.

BWI's experts do not disagree with Gardner's expert's explanation of the Mexican legal decision-making process.

 Gardner pleaded causes of action under objective liability, Articles 115[4], 116[5] and 119–VIII; under liability of heads of households and hotel owners, Article 97[6]; and under liability of persons exercising technical or liberal professions, Article 98.[7] In support of its motion for summary judgment, BWI asserted that it was not a person exercising a technical or liberal profession. Gardner does not raise this issue on appeal and so waives it. BWI also asserted that it did not own, operate, or possess the Hotel

Playa Blanca in September 1990, or at any other time. This ground is apparently directed toward Gardner's objective liability claims. Gardner does not raise the issue on appeal and so waives her objective liability claims.

*Extracontractual Liability*

In connection with extracontractual (tort) liability, C.C.Quintana Roo art. 87 provides:

All acts of man which are not an offense, executed by fault or negligence, whether unintentional or intentional, which cause damage to another in his person or in his effects, obliges its author to repair the damage ·and to indemnify the injuries in accordance with the provision of this Code.[8]

In · connection with corporate liability, C.C.Quintana Roo art. 100 says:

Corporate bodies are liable for the damages that their legal representatives may cause in the carrying out of their duties.[9]

Article 96 says:

Employers and owners of industrial and commercial establishments, or of any means of transport, are obligated to pay

4. C.C.Quintana Roo art. 115 reads:

Whenever a person makes use, as owner, or original or secondary possessor, of machinery, furnaces, substances, mechanisms, utensils or inherently dangerous devices, by reason of their explosive or inflammable nature, by their electrical current transmitted thereby, or by any similar causes, he is liable for the damages incurred therefrom, even if there is no fault or negligence on his part.

5. C.C.Quintana Roo art. 116 reads:

No liability exists in the case of the preceding article, if the damage is due to the fault or inexcusable negligence of the victim, or to the fault of a third party.

6. C.C.Quintana Roo art. 97 reads:

Heads of households and the owners of hotels or boarding houses are obliged to respond for the damage or injuries caused by their servants in the performance of their duties.

7. C.C. Quintana Roo art. 98 reads:

The persons exercising technical or liberal professions are obliged to respond for the damage and losses caused in their performance of duty,

by their assistants, helpers, collaborators, clerks, patients or employees.

8. Zamora translates the statute as follows:

Any act of man which is not a criminal offense, performed through fault [*culpa* ] or negligence, whether unintentional or intentional, which causes damage to the person or property of another, obligates the author to repair the damage and to indemnify the injuries in accordance with the provisions of this Code.

9. Article 87 is similar to the C.C.D.F. art. 1910, which says:

He who acting illegally or against good customs causes damage to another, is obliged to repair it, unless he proves that the damage occurred in consequence of the fault or inexcusable negligence of the victim.

Gomez-Palacio in his affidavit says Article 1910 allows the actor to avoid liability by proving the damage was caused by the victim's fault or inexcusable negligence, whereas Article 87 provides for no such defense. The Quintana Roo legislature may have removed this defense, he said, because it wanted to protect foreign visitors to help safeguard the tourism industry in the state, the site of Cancun and various Mayan ruins.

for the damages and losses caused by their workers or employees in the exercise of their work.

Zamora opined that Articles 87 and 100 combine to provide direct liability to the corporation, perhaps for the corporation's failure to adequately train its inspectors or its failure to adequately design inspections. Articles 87 and 96 combine, he says, to produce a type of indirect liability, that is, to pass on to the corporation the possible negligence of its inspectors or workers.

In an amended affidavit, Zamora says that a Mexican court could hold BWI negligent for failing to act in discovering and correcting the dangerous condition. He argues that a Mexican court could find that BWI, which had a duty to see that hotels operating under its name were safe and represented the "highest standards of lodging excellence," was negligent in failing to identify the pool dangers and in failing to act in accordance with its affiliation agreement. Although the liability may have arisen from the agreement, the liability itself was noncontractual, he says:

> Having created a situation in which unsuspecting foreign tourists would be attracted to a hotel connected with the excellent Best Western network, it was negligent of BWI to ignore the unsafe conditions that were present at Hotel Playa Blanca and that were hazardous to the very people at whom the network was directed.

A BWI expert, Navarro Velasco, contends that Article 87 deals only with personal acts, not corporate acts. He states that any liability attributable to a corporation must come under Article 100, not Article 87. He notes that the Mexican Supreme Court, in discussing liability for personal acts, "has described 'civil liability based on the personal act attributed to an identified person.'" He cited Poder Judicial de la Federacion Jurisprudencia y Tesis Aisladas, 1917–1994; Sala Terc-era; Seminario Judicial de la Federacion; 5A; XLVI; p. 2190.

Moreover, Velasco says, even Article 100 does not apply here because under the Federal Law of Companies and Cooperatives a "legal representative" is not just an ordinary employee, but is limited to (1) a company's administrator; (2) an attorney granted power of attorney, Article 10; and (3) one or more managers named by the shareholders, directors, or administrator, Article 145. A manager is the company's "supreme boss," he says, citing the Dictionary of Private Law, Editorial Labor, S.A., Barcelona, Spain.

Zamora disagrees with Velasco's assertion that the law of Quintana Roo shields BWI from liability. Zamora says Article 87 comes from Code Napoleon arts. 1382 and 1383,[10] and that both the French civil code and the civil code of Quintana Roo contemplate the imputation to corporate bodies of liability stemming from negligent acts carried out by corporate organs, officers, employees, or agents.

Zamora also says that Velasco interprets Article 100 too narrowly, and that Mexican and French authorities do not read similar laws so narrowly but rather emphasize the fact that corporate entities act through the operation of their "organs" (*organos*), a concept not clearly defined.

Gardner also counters BWI's argument that under Article 100 a "legal representative" is limited to certain administrators and attorneys. The law that BWI cites, Federal Law of Companies and Cooperatives, does not use the term "legal representative" and refers only to parties that may contractually bind a corporation and does not act to limit tort liability, Gardner says.

Gardner also contends that BWI failed to offer any summary judgment proof that Article 100 is inapplicable because it offered no proof about BWI's management or legal representatives.

---

**10.** Art. 1382. Every act of a man which causes injury to another obligates the one by whose fault it occurred to give redress.

Art. 1383. Everyone is responsible for the injury he has caused not only by his act, but also by his neglect or imprudence.

French Civil Code, translated in FRENCH LAW: CONSTITUTION AND SELECTIVE LEGISLATION (G. Bermann, H. de Vries & N. Calston ed. 1994).

Zamora also criticizes BWI's expert, Legarreta Martinez's, affidavit, in which he states that no liability exists under Articles 87 and 100, saying that Martinez's statements cited no authority and appeared to be simply unfounded personal opinions. Zamora cites Rafael de Pina, a Mexican civil law scholar, for the proposition that corporations can act only through their agents, and therefore, corporations, just like individuals, are subject to tort liability for damages caused by the negligent acts of their employees who operate in the scope of their employment.[11] Zamora said if an employee or legal representative of BWI was negligent in failing to inspect the hotel or in failing to identify an unsafe condition during an inspection, the negligence of the employee would be imputed to BWI by Article 100, and BWI would be held negligent under Article 87.

### Third-Party Contractual Rights

With reference to third-party contractual rights, C.C.Quintana Roo art. 253 provides:

> The unilateral statement of the will (consent) of the obligor is the obligational source of the stipulation made in a contract in favor of a third person.

Also with reference to third-party rights, C.C.Quintana Roo art. 254 provides:

> The third person in favor of whom the stipulation is made has the right to demand of the obligor the fulfillment of the obligation to which the obligor has committed itself, notwithstanding the right of the stipulator to also demand compliance, unless it is expressly agreed upon in the contract that only the third party beneficiary may solely do it.

Gardner's expert, Gomez–Palacio, contends that the agreements give BWI a right to inspect the hotel to ensure quality and safe-

ty, and that this right implies an obligation to assure that all identifying marks on the pool are accurate. He says Gardner, who made reservations at the "Cancun Best Western" through a common reservation service, was a third-party beneficiary of the affiliation agreement and addendum under the law of Quintana Roo.

Zamora concedes that Martinez correctly states that the affiliation agreement and the addendum do not contain express stipulations about third-party beneficiaries, but he contends that Articles 253 and 254 do not require express stipulations. The articles say only that "unilateral declaration of intent of the promisor is the obligational source of the stipulation made in a contract in favor of a third party."

BWI expert Velasco points out, however, that the affiliation agreement and the addendum contain no reference to a third-party beneficiary. He argues that Mexican law requires a real, positive declaration of intent by the promisor, and that no obligations other than those set forth in the contract should be read into the contract. He cites two portions of the C.C.Quintana Roo: Article 153:

> The declaration of will should be expressed with a real and positive intention of obligating oneself.

and Article 166:

> No matter how general the terms are of a juristic act, they should not be understood to include effects and cases different from those with respect to which the interested parties contracted or the author obligated itself by means of a unilateral declaration of its will.

---

11. Zamora cites two authorities:

> The liability of corporate entities—according to VON TUHR—conforms to the idea that the acts of organs of the corporate entities are acts of the entities themselves, since such corporate entities are incapable of acting, from which follows that they are liable for the acts of their organs, in accordance with general rules, that create a duty to compensate injury.
> 3 RAFAEL DE PINA, DERECHO CIVIL MEXICANO at 238.

> Corporate bodies [*personas morales*] . . . operate and are bound by means of the organs that represent them. Individuals [*personas fisicas*], in carrying out the duties assigned to the corporate organ, act as representatives of it, and for this reason the liabilities and rights derived from the activity of the organ are acquired by the corporate body.
> *Instituto de Investigaciones Juridicas, Codigo Civil para el Distrito Federal en Materia Comun (Comentado)*, Tomo IV, p. 72 (1987).

### Application of Law to Facts

In Texas, questions of foreign law are mixed questions of law and fact. Rule 203 of the Rules of Civil Evidence is a hybrid rule by which the presentation of the law to the court resembles the presentment of evidence, but which ultimately the court decides as a matter of law. *Lawrenson v. Global Marine, Inc.*, 869 S.W.2d 519, 525 (Tex.App.—Texarkana 1993, writ denied). Here, the experts generally agree about the existence of certain statutes, but disagree about the application of the statutes to the facts. The application of the law to the facts is a question of law.

When the only evidence before the court is uncontroverted opinions of a foreign-law expert, a court generally will accept those opinions as true so long as they are reasonable and consistent with the text of the law. *See AG Volkswagen v. Valdez*, 897 S.W.2d 458, 461 (Tex.App.—Corpus Christi 1995, no writ); *Lawrenson v. Global Marine Inc.*, 869 S.W.2d at 526. Here, however, the opinions of the experts conflict.

Summary judgment is not proper where there is a disputed material fact issue. Tex.R.Civ.P. 166a(c). Here, the parties do not argue the facts; rather, the experts on the law of Quintana Roo disagree on the application of the law to the facts.

As a federal court said in a summary judgment case involving French law:

> It is fundamental that, if there be a disputed issue of a material fact, the Court should not grant summary judgment. In this case there is no dispute as to the factual situation, although experts on French law have disagreed as to the interpretations to be placed thereon. Should the case be heard on its merits, these same "disputes" would exist and the Court would then be obliged to accept the interpretation of one or more of the experts or, in the alternative, arrive at its own conclusion upon a review of the French law and decided cases.
>
> . . . .
>
> A disputed interpretation of a foreign law does not raise a material issue of fact sufficient to preclude action on a motion for summary judgment where, as in this case, counsel agree that all of the pertinent foreign law has been properly submitted as evidence.

*Caribbean S.S. Co., S.A. v. La Societe Navale Caennaise*, 140 F.Supp. 16, 20–21 (E.D.Va.), *aff'd, Reynolds Jamaica Mines, Ltd. v. La Societe Navale Caennaise*, 239 F.2d 689 (4th Cir.1956).

Professors Wright and Miller said in discussing the cited case:

> If the proof before the [trial] court on a summary judgment motion is not harmonious or is unpersuasive or inconclusive, the court should request a further showing by counsel, engage in its own research, or direct that a hearing be held, with or without oral testimony, to resolve the issue. A combination of these courses will ensure as detailed a foreign-law presentation as might be anticipated at a full trial on the merits. Once foreign law is ascertained to the court's satisfaction, the court should proceed to decide the summary judgment motion as it would in any other context.

9 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 2444 (1995).

After reading the applicable statutes and considering the affidavits of all the experts, we have concluded that the civil code of Quintana Roo does provide Gardner an extracontractual cause of action against BWI under Articles 87, 96, and 100, if she can prove the requisite elements for imposing liability. Even if Article 100 applies only to BWI's management, it is a question of fact whether management was negligent in connection with the pool inspection or maintenance.

As for third-party contractual liability under Articles 253 and 254, both parties apparently agree that the affiliation agreement makes no specific mention of third-party beneficiaries. The civil code seems to require that a unilateral statement of the obligor's consent be contained in the agreement. We find no such statement in the agreement involved here.

BWI further argues that, as a matter of law, it cannot be liable to Gardner because it had not yet conducted an inspection at the time she was injured. Under the addendum to the affiliation agreement executed August 2, 1990, BWI agreed to perform inspections at least once each year. BWI argues that this means it had no duty to perform an inspection until July 1991. The accident happened in September of 1990, and BWI says it performed an inspection in December 1990.

BWI's possible liability in connection with the timing of inspections is a question of fact. BWI submitted no summary judgment evidence concerning the timing of the inspection. Even if we take as true BWI's statement that it conducted an inspection only in December 1990, under the summary judgment evidence presented to the trial court, we cannot say as a matter of law that such fact would absolve BWI of all negligence.

The summary judgment for BWI is affirmed as to Gardner's claim as a third-party beneficiary under the affiliation agreement and addendum. Gardner's causes of action for extracontractual liability under Articles 87, 96, and 100 are severed. The summary judgment as to those claims is reversed, and they are remanded to the trial court for trial.