### G. L. HAAS AND ANOTHER V. PETER CHOUSSARD.

An action lies by one riparian proprietor against another, for damages incurred by the former by reason of back water caused by a dam erected by the latter on his own land, except where the latter has acquired the right so to back the water by purchase from the former or some one under whom he claims, or by prescription.

It would seem that ten years uninterrupted enjoyment of the use of a dam, whereby the water is backed upon the land of other proprietors, would give a right by prescription to maintain the dam ever afterwards at the height at which it had been kept throughout the period of ten years.

Whether an action for throwing back water will lie for merely nominal damages, where there has been no actual injury, is not free from doubt, though supported by American authorities. [This probably means where, from the nature of the case, if there be any such in law, there could not be any injury; else, it would seem that an action would lie, if for no other reason, to prevent the acquisition of a right by prescription.—REPS.]

Where the plaintiff, among other damages from the back water from defendants' dam, alleged that the dam caused the water to set back, become stagnant and putrid upon and along the plaintiff's premises, creating a grievous nuisance, and endangering the health and lives of his family; and the defendants permitted evidence to go to the jury without objection, showing the former uses of the water, and that it had become unfit for use, and the probable damages occasioned thereby; on appeal by the defendants, the Court said it would be unreasonable that the whole judgment should be reversed, (other grounds for damages being proved,) although the charge of the Court may have been more precisely adapted to the evidence than to the pleadings of the plaintiff.

Appeal from Bexar. Tried below before the Hon. Thomas J. Devine.

Suit by appellee against appellants for damages done the former by reason of a mill dam which the latter had erected immediately below him on the Medina river. The petition claimed damages and abatement of the nuisance. Both premises were in the town of Castroville. The proceedings are stated as fully in the Opinion, as is necessary to show the

points of law decided. There was no question of prescription involved. The plaintiff had a verdict for $620, upon which judgment for same was entered; but it did not appear that the plaintiff insisted on a judgment for the removal of the nuisance.

*Paschals & Stribling*, for appellants.

*C. Upson*, for appellee.

HEMPHILL, CH. J. There can be no doubt but that, upon the evidence, the plaintiff Choussard was entitled to recover for actual damage. He was the owner of lands on the river which were partially overflowed by the back water from the dam of the defendants below, inflicting other injuries as alleged and attempted to be proven by the plaintiff. He had a right to the use of the water adjacent to his lots, as it flowed in its natural channel; a right inherent to, and inseparably connected with, the land itself. (Angell on Water Courses Sec. 90.) The doctrine on the subject of rights of proprietors of lands on the banks of a stream, to the use of its waters, is condensed from the authorities, and expressed with equal force and precision, on page 439, Kent's Comm., Vol. 3, as follows, viz : " Every proprietor of lands on the banks of a " river, has naturally an equal right to the use of the water " which flows in the stream adjacent to his lands, as it was " wont to run, (*currere solebat*,) without diminution or altera- " tion. No proprietor has a right to use the water to the pre- " judice of other proprietors above or below him, unless he " has a prior right to divert it, or a title to some exclusive " enjoyment. He has no property in the water itself, but a " simple usufruct while it passes along. *Aqua currit et debet* " *currere* is the language of the law. Though he may use the " water while it runs over his land, he cannot unreasonably

" detain it, or give it another direction, and he must return it
" to its ordinary channel, when it leaves his estate.   Without.
" the consent of the adjoining proprietors, he cannot divert or·
" diminish the quantity of water which would otherwise de-
" scend to the proprietors below, nor throw the water back
" upon the proprietors above, without a grant or an uninter-
" rupted enjoyment of twenty years, which is an evidence of it."
(Simons and Stuart, 199, 1 Cond. Eng. Chan. 95 ; Mason v. Hill,
1 Barn. and Adolph. 1, 27 Eng. Comm. Law Rep. 1 ; 2 Hill, S.
Car. Rep. 634 ; Angell on Water Courses, Sec. 330.)   Ten
years in this State would afford the same presumption of a
grant, that twenty years would in England, and in other States,
having the like limitations as to real actions. Whether an action
for throwing back water will lie for merely nominal damages,
where there has been no actual injury, is not free from doubt,
though supported by American authorities.   (See cases above ;
also 1 Rawle, 27 ; Angell, Ib. Sec. 135, 331.)

But this is not material in this case, the plaintiff having al-
leged and proven actual damage.   He alleges that there was
a water power on his premises adapted to milling purposes ;
that he had erected a mill for grinding corn, which was put into
operation and was of great value to plaintiff, and which was
rendered worthless by the back water from the dam of the
defendants.   The testimony was conflicting as to the nature of·
this mill seat, the extent of the water power, &c., and as to
the value of the mill, machinery, &c., its adaptation to milling
purposes, and whether the mill had been in effective operation
or not.   It was for the jury to judge of this testimony and
determine the extent of the actual damage from the back wa-
ter to the mill of the plaintiff.

The plaintiff also alleged that there was a natural ford
across the river which was of great accommodation to him,
and that he had suffered great damage by the water being
rendered deep and unfordable.   It was in proof that the ford
could not be used after the building of the dam by the defend-.
ants.

The plaintiff also alleged, and it was proved, that the back water overflowed his lots to some considerable extent.

He also represented that the dam of defendants caused the water to set back, become stagnant and putrid upon and along his premises, creating a grievous nuisance, and endangering the health and lives of his family.

The Court, in the charge, represented in substance the plaintiff as alleging that the waters had become stagnant and unfit for the use of the plaintiff's family, or, as said in another place, unfit for the uses to which it was formerly applied by the plaintiff and his family.

This has been assigned as error ; that the Court charged a case not made by the petition.

Now, as a general rule, the facts constituting the cause of action must be distinctly stated in the petition, and a party cannot recover unless [by proving the case as stated ; and it would seem that the most reasonable construction is, that the plaintiff intended to aver that the atmosphere was so corrupted by the stagnant water, as to endanger the health of his family, and not that it was rendered so foul as to be unfit for the purposes to which it had been previously applied.  If the plaintiff intended to charge damages because the water had been rendered unfit for culinary or domestic purposes, he should have stated its previous use.

But though the averment as to the circumstances of this special injury are not so .precise and certain as they should have been, and though the case, as stated in the charge, is not perhaps in exact accordance with that set forth in the petition, yet the error is not of such character as to require a reversal of the judgment.   The allegation was sufficient to apprise the defendants that the plaintiff intended to prove damage from the stagnant state and the putridity of the water.   The unwholesome state of the water was the principal point in the averment.

The defendants also permitted evidence on the part of the

plaintiff to go to the jury without objection, showing the for-
mer uses of the water, and that it had become unfit for use,
and the probable damage occasioned thereby.   Under such
circumstance, it would be unreasonable that the whole judg-
ment should be reversed, although the charge of the Court
may have been more precisely adapted to the evidence than to
the pleadings of the plaintiff.   There were other grounds of
damage, and proof had been admitted to establish them.   The
verdict being general it cannot be ascertained how much was
allowed for this special injury.   But whether much or little,
or any, it would be unjust to attempt its correction by a re-
versal of the judgment, the defendants having been apprised by
the pleadings of the substantive portion of the charge, and
proof having been admitted without objection.

The ground for a new trial, that one of the witnesses was
mistaken in his evidence, is not sufficient.   His evidence, if
admitted as corrected by himself, being only cumulative and
to facts proven by others, could not have altered the result.

Nor ought the motion for a new trial to have been sustained
on the ground of the exclusion of legal evidence.   Whether
the interrogatories were leading or not, we do not intend to
consider.   There was certainly error in refusing the evidence
on the ground that the witnesses were not experts.   The evi-
dence of mill-wrights, surveyors, &c., would be more satisfac-
tory, but that is no reason why others should be excluded, and
in fact a baker and a merchant were afterwards permitted to
testify as to whether the plaintiff had a mill-seat on his prem
ises, its value, &c.

But the rejection of the evidence is no sufficient ground for
reversal.   There was other and abundant testimony as to
whether the plaintiff had a suitable site for a mill-seat, whether
he had any water power, &c.   The next witness, who is a mill-
wright, says he saw no water power on the plaintiff's premises,
and did not think there was any worth much, &c.

Upon the whole, there is believed to be no sufficient ground

for the reversal of the judgment, and it is ordered that the same be affirmed.

Judgment affirmed.