**In re the ADJUDICATION of WATER RIGHTS of the BRAZOS III SEGMENT of the BRAZOS RIVER BASIN.**

No. 10–86–132–CV.

Court of Appeals of Texas, Waco.

Feb. 12, 1987.

Rehearing Denied March 12, 1987.

Jim Mattox, Atty. Gen., Mary F. Keller, Executive Asst. Atty. Gen., Nancy N. Lynch, Chief, Environmental Protection Div., Ginny Agnew, Asst. Atty. Gen., Austin, for appellants.

Linda M. Gassaway and David C. Alford, Smith & Bratcher, Waco, Lutcher B. Simmons, Austin, for appellees.

## OPINION

McDONALD, Chief Justice.

This is an appeal by the Texas Water Commission from the district court's modification of the Water Commission's Final Determination in the Adjudication of Water Rights in the Brazos III Segment of the Brazos River Basin.

The Commission held a number of hearings over an extended period of time and then filed its Final Determination in the district court. Affected persons were given notice of the filing, and appellees filed their exceptions to the determination. Here, there were 6 exceptions filed by 11 affected persons to the Water Board's determination.

The trial court, after considering all evidence before the Water Board as well as all evidence taken in its hearing, modified the Commission's determination by recognizing equitable water rights for all of the exceptors.

The Water Commission appeals contending "the trial court erred in creating equitable water rights under Section 11.303 in that no equitable power exists to create water rights".

The parties stipulated that for each claim at issue the original land grant was made prior to January 20, 1840 (which, in the absence of a specific grant from the Sovereign, conveyed no right to divert and use water).

The Water Commission took the position that any grants arising after January 20, 1840 (the date when Texas adopted the Common Law) carried no automatic appurtenant irrigation rights, citing *State v. Valmont Plantations*, 346 S.W.2d 853 (Tex. Civ.App.—San Antonio 1961), affirmed and opinion adopted as opinion of the Supreme Court, 163 Tex. 381, 355 S.W.2d 502 (1962); and that it had no jurisdiction to recognize any claim of a water right based on equity.

■ District courts, however, do have equitable power by virtue of Article V, Section 8 of the Texas Constitution as amended in 1891; and such equitable power is available in a proper situation to recognize water rights in land owners adjacent to rivers whose grants were patented prior to January 20, 1840. *State v. Hidalgo County Water Control and Improvement District No. Eighteen*, 443 S.W.2d 728 (Tex.Civ.App.—Corpus Christi 1969, writ ref'd n.r.e.). In *Hidalgo*, the court of appeals recognized equitable water rights for claimants holding under pre–1840 Spanish or Mexican grants based upon the long use of water by those claimants and the claimants' assumption that they had the right to irrigate.

Appellees herein showed to the Water Commission and the trial court that prior to *Valmont*, supra, there was uncertainty as to the nature and origin of water rights in the Brazos River; that numerous dams have been constructed on the Brazos River which have changed the river from a freeflowing stream to a controlled water course; that this has resulted in a great amount of water being available for irrigation due to the ability to catch and store flood waters in these reservoirs; that it was undisputed at trial that there was an abundance of water in the Brazos River; that such waters, if released and not beneficially used, will flow unused into the Gulf of Mexico; that appellees have used water from the Brazos River for irrigation purposes in good faith on a yearly basis for many, many years; that during such time, no one has complained or tried to stop such use, including the State or any of its agencies; that appellees have spent great sums of money developing irrigation systems which utilized water from the Brazos River; that their land values would be greatly reduced if denied water rights to the Brazos River; and that since the inception of irrigation many years ago, there has never been a time when water was not available for diversion and use by appellees.

■ We think the trial court was authorized to use its constitutional equity powers as it did, and that the evidence sustains such action.

The Water Commission further contends that even if the trial court did not err in creating equitable water rights, it did err in assigning a priority date for such rights

earlier in time than the date of the judgment.

■ It is clear that the court did not "create" equitable water rights, but rather recognized those rights which were already in existence long before the date of the judgment. Since the rights were in existence long prior to the judgment, the trial court did not err in setting the priority date as the date of first beneficial use for each appellee.

All of appellant's points are overruled.

Appellees by cross-points assert the trial court erred in refusing to recognize water rights for certain appellees based on the doctrine of prescription; and that certain sections of the Texas Water Code are unconstitutional.

Appellees' cross-points are overruled.

The judgment of the trial court is affirmed.

AFFIRMED.

THOMAS, Justice, dissenting.

The majority opinion affirms the trial court's judgment which modified the Final Determination of Claims of Water Rights in Segment III of the Brazos River Basin by recognizing an equitable water right in each appellee. I respectfully dissent.

The central question on appeal is whether there were, as appellees claim in their brief, "extraordinary circumstances" similar to those in *Hidalgo* which support the recognition of equitable water rights in their favor. *See State v. Hidalgo Co. Water Con. & I. Dist. No. Eighteen*, 443 S.W.2d 728, 745–50 (Tex.Civ.App.—Corpus Christi 1969, writ ref'd n.r.e.). Appellees argue their circumstances were "strikingly similar" to those in *Hidalgo* because: (1) there was uncertainty about the nature and origin of water rights in the Brazos River "prior to the decision in *Valmont*"[1]; (2)

the construction of dams had changed the river from a free-flowing stream to a controlled watercourse; (3) the damming of the river made a greater amount of water available for irrigation; and (4) there was an abundance of water which, if not beneficially used, would be wasted. They also point out they will undoubtedly suffer hardship and economic loss if they are not granted equitable water rights.

Appellees can never qualify under *Hidalgo* because they were not good-faith users when this proceeding was instituted. Good-faith use is, I believe, absolutely essential to the doctrine of equitable water rights.

In 1926 the Texas Supreme Court erroneously announced in dicta that pre–1840 Spanish and Mexican land grants conveyed riparian irrigation rights regardless of whether there was a specific grant of such right. *Motl v. Boyd*, 116 Tex. 82, 286 S.W. 458, 465 (1926). The Supreme Court corrected this error in 1962 when it adopted the decision in *Valmont*. *In re Adjudication of the Water Rights, etc.*, 642 S.W.2d 438, 441 (Tex.1982). Thus, from 1926 until 1962, many landowners asserted claims in good faith to riparian irrigation rights based on *Motl*. *See Hidalgo*, 443 S.W.2d at 749.

The *Hidalgo* suit was originally filed in 1956, after *Motl* but prior to *Valmont*, but the final judgment was not entered until 1966, which was four years after the *Valmont* decision.[2] *See id.* at 730–31. Thus, the court was faced with the unique question of what to do about the rights of landowners in Spanish and Mexican land grants who, based on *Motl*, were making good-faith use of water for irrigation when the *Hidalgo* suit was filed in 1956 but whose good-faith use had been abrogated by *Valmont* prior to the entry of the judgment in 1966. It responded to this unique

---

1. *See State v. Valmont Plantations*, 346 S.W.2d 853, 878 (Tex.Civ.App.—San Antonio 1961), *opinion adopted*, 163 Tex. 381, 355 S.W.2d 502 (1962).

2. The history of the *Hidalgo* litigation is reviewed in an informative article in the Texas Tech Law Review. *See Smith, The Valley Water Suit and Its Impact on Texas Water Policy: Some Practical Advice for the Future*, 8 Tex.Tech L.Rev. 577 (1977).

situation by creating equitable water rights for "those who have been making a good faith use of the waters of the Rio Grande for irrigation purposes *prior to the institution of this suit* but do not qualify as Class A users." [3] *Id.* at 749. (Emphasis added). This class specifically included those owners who had asserted riparian irrigation claims based on the erroneous dicta in *Motl.* *Id.* The *Hidalgo* court clearly based the equitable water rights on good-faith use and then justified its action by pointing to other extraordinary circumstances. *See id.*

Every person is conclusively presumed to know the law. *E.H. Stafford Mfg. Co. v. Wichita School Supply Co.,* 118 Tex. 650, 23 S.W.2d 695, 697 (1930). Therefore, after *Valmont* was decided in 1962, neither appellees nor anyone else could thereafter base a claim of good-faith use on *Motl.* Certainly, appellees cannot claim good-faith use from 1963 to 1967, inclusive, the period of time prescribed by the Water Rights Adjudication Act for determining beneficial use. *See* Tex.Water Code Ann. § 11.303(b) (Vernon Supp.1987). In fact, they could not claim good-faith use for almost twenty years prior to the institution of this proceeding to adjudicate water rights in the Brazos River Basin.

Unlike *Hidalgo,* this court is not faced with the question of what to do with the rights of persons who were making a good-faith use of water for irrigation when this proceeding was instituted. To accept appellees' argument would be tantamount to recognizing equitable water rights after twenty years of use which can in no event be characterized as in good faith. Long-term use by appellees, who have not complied with the Water Rights Adjudication Act, does not authorize this court to disregard the *Valmont* decision. *See Hidalgo,* 443 S.W.2d at 731. Accordingly, I would reverse the trial court's judgment, render a judgment denying appellees' appeal and affirm the Final Determination of

Claims of Water Rights filed in the district court in Milam County.

---

**3.** "Class A users" were those who had acquired a water right by complying with the appropriation statutes or through recognition of the right by the state. *Hidalgo,* 443 S.W.2d at 748.