**In re The ADJUDICATION OF WATER RIGHTS OF the BRAZOS III SEGMENT OF the BRAZOS RIVER BASIN.**

No. C–6317.

Supreme Court of Texas.

Feb. 17, 1988.

Rehearing Denied April 6, 1988.

Jim Mattox, Atty. Gen., Virginia Agnew, Asst. Atty. Gen., Austin, for petitioner.

Smith and Bratcher, David C. Alford and Linda M. Gassaway, Waco, Lutcher Simmons, Austin, for respondent.

## OPINION

PHILLIPS, Chief Justice.

This is an appeal from an adjudication of water rights in the Brazos III Segment of the Brazos River Basin. The Texas Water Commission, acting pursuant to section 11.-301 et seq., Texas Water Code (the Water Rights Adjudication Act), began this proceeding in 1983 by taking evidence at public hearings and investigating claims of water rights within the segment. As a result of these hearings, the Commission issued its final determination in compliance with section 11.315 in 1985. The Commission next filed this final determination with the district court as required by section 11.317, and notices were sent to all affected persons.

Eleven affected persons filed six exceptions pursuant to section 11.318, and, after hearing additional evidence, the district court modified the Commission's final determination by recognizing equitable water rights for all of the exceptors.[1] With one justice dissenting, the court of appeals affirmed the judgment of the district court, holding that district courts have the equitable power to recognize water rights on behalf of the exceptors by virtue of Article

---

1. The Water Commission has previously issued ten year water permits to most of these exceptors.

V, Section 8 of the Texas Constitution. 726 S.W.2d 214. We reverse the judgment of the court of appeals and affirm the final determination of the Texas Water Commission.

Prior to 1967, Texas recognized a dual system of water rights; (1) the law of riparian rights, and (2) the law of appropriation of waters. *In re Adjudication of the Water Rights of the Upper Guadalupe River Basin,* 642 S.W.2d 438, 439 (Tex. 1982). The Water Rights Adjudication Act was passed in 1967 to remedy this chaotic condition of Texas water law by consolidating water administration into a single system. *Id.* at 439–42. In so doing, the Texas Legislature created for the first time an orderly forum and procedure for the adjudication and administration of water rights. *Id.* at 442; TEX.WATER CODE ANN. § 11.301 et seq. The Water Code assigns to the Water Commission the authority to issue water permits upon application after appropriate notice and hearing is given. TEX.WATER CODE ANN. §§ 5.013, 11.-135. Section 11.304 of the Water Rights Adjudication Act authorizes the adjudication of water rights, and section 11.303 recognizes only those water rights which are valid under existing law. TEX.WATER CODE ANN. §§ 11.303, 11.304. Finally, section 11.341 specifically exempts from the Act's provisions any action or proceeding instituted before August 28, 1967. TEX.WATER CODE ANN. § 11.341.

The Water Commission urges that the recognition of equitable water rights by the courts below improperly creates a new method of acquiring a water right outside of those prescribed by the Act, resulting in the type of uncertainty and chaos which the Act was intended to remedy. For the reasons discussed below, we agree.

*Spanish and Mexican Land Grants*

In 1926, this court determined that all land grants made between 1840 and 1895 by the Republic or State of Texas carried with them an implied right to irrigate. *Motl v. Boyd,* 116 Tex. 82, 107–08, 286 S.W. 458, 467 (1926). These irrigation rights, often called "riparian rights," pass under silent grants of land by virtue of our State's adoption of the common law in 1840.[2] *See State v. Hidalgo County Water Control and Improvement District No. 18,* 443 S.W.2d 728, 738 (Tex.Civ.App. —Corpus Christi 1969, writ ref'd n.r.e.). This court in *Motl* further announced in dicta, however, that Mexican land grants from 1823 to 1840 also conveyed implied riparian rights. *Motl,* 116 Tex. at 107–08, 286 S.W. at 467.

In *Valmont Plantations v. State,* 163 Tex. 381, 355 S.W.2d 502 (1962), this court adopted the opinion of the court of civil appeals. *State v. Valmont Plantations,* 346 S.W.2d 853 (Tex.Civ.App.—San Antonio 1961, opinion adopted). Noting that the Spanish and Mexican system of irrigation was not a riparian system, this court held that Spanish and Mexican land grants do not carry with them any implied rights of irrigation, thereby expressly rejecting the dicta in *Motl v. Boyd. Valmont,* 163 Tex. at 383, 355 S.W.2d at 503 (1962). We reaffirm these principles today and hold that owners of all Spanish and Mexican lands granted prior to 1840 must affirmatively show a grant of irrigation rights from the sovereign to claim a riparian right.

In this case, it is stipulated that all of the exceptors hold title through pre–1840 Spanish and/or Mexican land grants. It was further stipulated that no exceptor has shown an affirmative grant of water rights from the sovereign. Accordingly, the exceptors have no legal claim of riparian wa-

---

2. Act of January 20, 1840, § 1, 1840 Tex.Gen. Laws 4, 2 H. GAMMEL, LAWS OF TEXAS 177 et seq. (1898). The current version of this law is TEX.CIV.PRAC. & REM. CODE ANN. § 5.001, which provides:

> The rule of decision in this state consists of those portions of the common law of England that are not inconsistent with the constitution or the laws of this state, the constitution of this state, and the laws of this state.

Texas first recognized the riparian system in 1856. *See Haas v. Choussard,* 17 Tex. 588, 590 (1856); *see generally* Townsend, *Cancellation of Water Rights in Texas: Use It Or Lose It,* 17 St. Mary's L.J. 1217, 1220 (1986).

ter rights. *Valmont*, 163 Tex. at 383, 355 S.W.2d at 503.

### Equitable Water Rights

■ The question for our determination is whether the courts below erred in holding that the exceptors are entitled to equitable water rights based on prior use in the Brazos III segment of the Brazos River Basin. The exceptors maintain that district courts may, under Article V, Section 8 of the Texas Constitution, grant in equity certain water rights not otherwise recognized by law. We disagree, because the Legislature in passing the Water Rights Adjudication Act provided the exclusive means by which these rights may be recognized.

The exceptors rely on *State v. Hidalgo County Water Control and Improvement District No. 18*, 443 S.W.2d 728 (Tex.Civ. App.—Corpus Christi 1969, writ ref'd n.r. e.), for the proposition that district courts may grant equitable water rights. The *Hidalgo* case did recognize such rights, but only on the unprecedented facts of that case. We hold that *Hidalgo* is limited to those facts, and cannot again be used as authority for the equitable creation of water rights. To hold otherwise would destroy the benefits of the Water Rights Adjudication Act.

The Water Rights Adjudication Act was passed by the Texas Legislature in 1967. Tex.Water Code Ann. § 11.301 et seq. The drafting of the Act commenced during the course of the *Hidalgo* suit, and at least one commentator asserts that the complexity involved with court-adjudicated priority schemes was partially responsible for its passage. *See* Smith, *The Valley Water Suit and Its Impact on Texas Water Policy: Some Political Advice For the Future*, 8 Tex.Tech L.Rev. 577, 628–30 (1977). Section 11.341 of the Act specifically excludes the application of its provisions to the Lower Rio Grande adjudication, preserving any water rights which might be recognized in the then-pending *Hidalgo* litigation. That section provides:

> This subchapter does not affect any action or proceeding instituted before August 28, 1967, or any right accrued before that date except those specifically provided for in this subchapter.

■ In the instant case, the court of appeals held that the trial court did not "create" equitable water rights, but merely recognized those rights which were already in existence. 726 S.W.2d 214, 216. We disagree. The court in *Hidalgo* did not merely recognize water rights on behalf of the equitable claimants; rather, it created rights which heretofore did not exist. The court noted that mere prior good faith use did not ripen into a vested legal irrigation right:

> The circumstance that numerous tracts of land in the Lower Rio Grande Valley, having no connection with the legal title to an appropriative right, have been under irrigation for a long period of time does not authorize us to disregard the Valmont decision and say that such lands have a legal appurtenant water right under the appropriation statutes of this State.

*Hidalgo*, 443 S.W.2d at 731. Declaring that "the equity arm of a court is not inoperative in the presence of an unprecedented situation," the court in *Hidalgo* designated two classes of water rights, Class A and Class B. Class A comprised those claimants with legal rights:

> This class embraces those who have acquired a right to use waters of the Rio Grande by virtue of having complied with the appropriation statutes of the State or those whose rights have been recognized by the State.

*Id.* at 748. Class B comprised those claimants with no legal rights:

> This class embraces those who have been making a good faith use of the waters of the Rio Grande for irrigation purposes prior to the institution of this suit but do not qualify as Class A users.

*Id.* at 749.

The courts below in this case have, like the court in *Hidalgo*, created water rights based solely upon equity. The Act allowed such a creation in *Hidalgo;* it precludes it here. Section 11.303(k) of the Act provides as follows:

(k) Nothing in this section shall be construed to recognize any water right which did not exist before August 28, 1967.

Absent the Act's specific exclusion of the *Hidalgo* litigation in section 11.341, no equitable rights could have been created in that case after August 28, 1967, the effective date of the Act. *Hidalgo* cannot reoccur, and cannot be a precedent for any further action.

Since the exceptors cannot claim the benefit of section 11.341's tolling provision, it was incumbent upon them to establish before the Water Commission a legal water right which existed prior to August 28, 1967. Having failed to do so, neither the Commission nor the courts have the power to create new equitable water rights. The legislature has the broad power to change the boundaries of equity jurisdiction, provided such legislation does not destroy or invade a constitutional right. *Johnson v. State*, 267 S.W. 1057, 1062 (Tex.Civ.App.—Dallas 1924, writ ref'd). We therefore hold that section 11.303(k) of the Water Rights Adjudication Act bars all equitable creation of water rights for cases filed after August 28, 1967.

Strong public policy concerns mandate this result. In *Lower Colorado River Authority v. Texas Dept. of Water Resources*, 689 S.W.2d 873 (Tex.1984), this court clearly instructed the Texas Water Commission not to issue permits for water already appropriated. To hold otherwise "would return water rights to the state of chaos that the act is designed to avoid." *Id.* at 882. Allowing district courts to grant equitable water rights outside the adjudication process of the Act would deprive the Commission of the control necessary to prevent overappropriation. Such a result would clearly frustrate the Act's purpose of consolidating into a single system the administration and adjudication of rights in state water.

Further, the Water Code assigns to the Texas Water Commission the authority to issue water rights permits. TEX.WATER CODE ANN. §§ 5.013(a)(1), 11.121 et seq. Upon proper application, notice and hearing, the Commission grants or denies the permit so long as, *inter alia*, the use will not impair existing water rights or vested riparian rights. TEX.WATER CODE ANN. §§ 11.124, 11.132, 11.133, 11.-134(b)(3)(B). These permits are for a term of years, and contain restrictions to ensure that the rights of downstream irrigators are protected. TEX.WATER CODE ANN. § 11.1381.

The exceptors in the instant case, however, have received from the courts below far greater rights than those which can be granted by the Commission. The district court granted riparian water rights based on *Hidalgo* and equity. The record reflects that the district court's award of water rights contained no restrictions preventing use during periods of low water on the Brazos River, yet many of those same claimants hold term permits restricting their use during low-flow levels. These latter restrictions serve to eliminate overappropriation and protect downstream irrigators. The district court's unrestricted award of equitable riparian rights serves to punish those downstream irrigators who have complied with the Water Code and whose water rights are threatened by the superior rights granted to these exceptors.

### Conclusion

To grant equitable riparian rights to the exceptors would inject uncertainty and chaos into Texas water law. The actions by the courts below improperly create a new system of water rights adjudication, frustrating the intent of the Legislature in passing the Water Rights Adjudication Act. Accordingly, we reverse the judgment of the court of appeals and affirm the Final Determination of the Texas Water Commission.