Frank R. DUKE, Appellant,

v.

M. G. REILY et al., Appellees.

No. 6968.

Court of Civil Appeals of Texas.

Beaumont.

Sept. 19, 1968.

Rehearing Denied Oct. 2, 1968.

J. C. Zbranek, Liberty, for appellant.

Price Daniel, Jr., Liberty, for appellees.

STEPHENSON, Justice.

This is an action for damages because of wrongful diversion of water. Defendants' motion for summary judgment was granted. The parties will be referred to here as they were in the trial court.

Plaintiff made the following allegations: That defendants acquired a certain 566.04 acre tract of land in the DeRumayor League in Liberty and Polk Counties April 16, 1964. That defendants constructed an earthen dam across Mills Creek, a navigable stream running across such tract of land. That Mills Creek is a tributary to Menard Creek which is also a navigable stream and which runs through land in the DeRumayor League owned by plaintiff. That plaintiff had been engaged in rice farming upon his land and had been withdrawing water from Menard Creek to irrigate his rice land. That defendants' dam, which formed Bear Foot Lake, stopped the flow of water from Mills Creek, or radically reduced the flow of water into Menard Creek causing plaintiff to suffer a serious loss to his rice crop in 1964 and again in 1965. That during the winter of 1965–1966 a portion of defendants' dam washed away causing damage to plaintiff. That defendants' act of damming up Mills Creek was in violation of Articles 7520 and 7521 Vernon's Ann.Civ.St. and Article 838 Texas Penal Code and, therefore, negligence per se and a proximate cause of plaintiff's damages. That defendants did not have authority from the Texas Water Rights Commission, or other authority, to catch the flood water of Mills Creek until late in 1966. That defendants' actions in constructing the dam were illegal, willful, malicious, wanton and done with a reckless disregard to plaintiff's rights, and asked for exemplary damages in addition to actual damages.

Defendants moved for summary judgment upon the following grounds: (I) That plaintiff did not have any right whatsoever, either appropriative or riparian to the waters of Menard Creek for irrigation purposes for two reasons: (1) Plaintiff did not have a permit issued by the Texas Water Rights Commission, or its predecessors. (2) Plaintiff's land is a part of an original land grant by the Republic of Mexico, from the State of Coahuila and Texas, dated April 25, 1831, which did not expressly provide for irrigation water rights. (II) That plaintiff's actions in diverting water from Menard Creek for irrigation purposes was illegal and in violation of certain statutes. (III) That during the winter of 1965–1966 the flood which came and washed out a portion of defendants' dam was an unprecedented flood and an act of God.

Affidavits were attached to such motions for summary judgment designed to support this last contention by defendants that the flood was unprecedented. Reference is also made to requests for admissions answered by plaintiff supporting the claim as to the land grant being from the Republic of Mexico dated April 25, 1831, and further admitting plaintiff did not have a permit issued by the Texas Water Rights Commission or its predecessors for irrigation purposes nor from the Department of the Army or the United States Corps of Engineers during the years material to this cause of action. The record does not show that plaintiff filed an answer to this motion for summary judgment. The original depositions of all parties and Louis L. McDaniels are filed in this court. There is no statement of facts, and the order granting the motion for summary judgment

makes no recitation as to what the court heard or considered.

Plaintiff's first point of error is that the trial court erred in granting the motion for summary judgment and holding that plaintiff had no rights for which he could seek redress for damages caused by an illegal dam constructed by defendants. Under this point of error, it is first argued that plaintiff had riparian rights to irrigate. In answer to the requests for admissions, plaintiff admitted that he did not have a permit issued by the Texas Water Rights Commission or its predecessors, The State Board of Water Engineers or The Texas Water Commission, to appropriate water from Menard Creek for irrigational purposes for the years in question in this case. Plaintiff also admitted his land involved in this case is a part of six leagues of land granted to J. F. DeRumayor by the Republic of Mexico, by grant dated April 25, 1831, signed by J. Francisco Madero as Commissioner of the Supreme Government of the State of Coahuila and Texas. This grant did not expressly provide that the right to irrigate was appurtenant to the land. In view of these admissions and the law expressed in the Court of Civil Appeals opinion in State v. Valmont Plantations, 346 S.W.2d 853, which opinion was adopted by the Supreme Court in Valmont Plantations v. State, 163 Tex. 381, 355 S.W.2d 502, we hold plaintiff did not have riparian rights to take the waters of Menard Creek for irrigational purposes.

Plaintiff next argues in connection with this first point of error that the depositions in this case show plaintiff acted in good faith and even though he may not have been entitled under the law to the use of the water for irrigational purposes, that defendant admittedly had no legal right to build the dam and willfully and intentionally caused the damages to plaintiff. We have been cited no cases involving the wrongful diverson of water as alleged in the present case, although plaintiff relies upon several cases allowing plaintiff to recover even though he was engaged in illegal activity. In one case plaintiff had failed to buy license plates for his automobile and in others plaintiffs were allowed recoveries even though they were driving a motorcycle without the owners consent at the time of an accident with defendant. We do not find these cases to be controlling of the point of law involved in the present case. Here, plaintiff had no legal right to the use of the water for irrigational purposes, and defendants had no legal duty to plaintiff not to divert the water for their own use. The illegal activity of plaintiff in the present case was not just incidental to the cause of action involved, but was the very basis of this cause of action. The point is overruled.

Plaintiff's second point of error is that the trial court erred in holding plaintiff could not recover for damages caused by the break in defendants' dam in 1966. Defendants attached a number of affidavits to their motion for summary judgment, all tending to prove that the flood breaking the dam was caused by an unprecedented rainfall which was an "act of God." It is plaintiff's contention that the contents of the deposition of Louis L. McDaniels raised an issue of fact as to whether the rain causing the flood was unprecedented, and therefore, it was improper for the trial court to grant the motion for summary judgment. We have carefully considered the affidavits and the depositions in passing upon this question.

The affidavit of James Grover Clarke contained the following:

Sometime after 6:00 p. m. on February 9, 1966, a heavy and pounding rain began to fall in this general area; the rainfall continued heavily and steadily throughout the night and into the early morning hours of February 10th. The rain came down so fast and continuously that I considered it a flash flood. I have never, before or after February 9th. and 10th., known of that much rain to fall in this area. So much water fell that the entire Menard Creek watershed upstream for several miles from Bear Foot

Lake was flooded. Upstream from Bear Foot Lake, water was over three feet above the wooden Menard Creek bridge which was on the County road leading from Fuqua to Holly Grove.

Several miles upstream from Bear Foot Lake at Outlaw Bend Estates Subdivision, the road through Menard Creek bottom or watershed was completely overflowed with water. It has never been under water since.

At the time of the flash flood on February 9th. and February 10th., 1966, I was the salesman at Outlaw Bend Estates Subdivision, located approximately 3 miles upstream on Menard Creek from Bear Foot Lake in the Big Thicket Lake Estates. On February 13, 1966, when I took Mr. Leon Turpin, 5119 Pensdale, Houston, Texas, to Outlaw Bend Estates to show him a tract of land, we were unable to cross the Menard Creek bridge located in Outlaw Bend Estates Subdivision, due to the Menard Creek flooding the land on each side of the bridge. The bridge is build up approximately seven feet above the Menard Creek bottom and was not under water. However, the land all around the bridge was completely under water. At the point where the bridge goes over Menard Creek in Outlaw Bend Estates Subdivision, Menard Creek had overflowed its banks and had spread out over the land about 250 feet at each end of the bridge.

The Menard Creek watershed or bottom was flooded for several days after February 10, 1966. Menard Creek was out of its banks for several days after February 10, 1966.

The rainfall in this area during that February 9th. and 10th. period was unprecedented; I have never known, before or since February 9th.—10th., that much water to fall in that area in such a short time.

I know of the following dams or spillways in this general area that washed out during this rainfall:

1.  The Gordie Griffin Dam on Williams Creek which runs into Menard Creek below Bear Foot Lake was partially washed out at the ends of the concrete spillway which had to be fixed with a bulldozer.

2.  The 250 acre lake at Lake Ivanhoe near Woodville had a breach in the earthen part of emergency spillway cutting a 12 ft. to 15 ft. wide place 3 feet deep causing them to lose 3 feet of water out of the 250 acre lake.

3.  The dam in a large lake at Wildwood Association, a Subdivision, at Village Mills was partially breached, causing that lake to loose a great deal of water.

4.  Three earthen dams at the Double A Lakes located approximately 13 miles east of Livingston, off Highway 190, were breached. Water went over all three of these dams and washed them out.

Somewhat similar affidavits of R. O. Chessher, Jewel Daniel Shotwell, Leonard Charles Leaser, Jr., O. C. McWhorter, J. D. Vickery, Luke Warren and H. D. Lemon were also attached to such motion for summary judgment.

The deposition of Louis L. McDaniels contained the following: He is employed as Chief Hydrologist and Director of Technical Services for the Texas Water Rights Commission. He studied an application filed by defendants for a permit to authorize the continuation and use of an existing dam. (The one involved in this case.) A copy of his written report to The Texas Water Rights Commission was attached to this deposition. This report contained the following:

Rains of 10 inches and more in 12 hours and less time are not rare occurrences in southeast Texas. Because the Applicants may not have experienced such rains and floods in the vicinity should have no bearing on the selection of design criteria for the safety of the structure.

A characteristic of the area is that heavy rains are often widespread and can cause general flooding of large areas. In such an event, the failure to the Applicants' dam might not produce a flood stage downstream that would exceed one which had just occurred; or, such a failure might not add materially to the height of a flood rise in progress. Materially is qualified in relation to the area of potential flood damage along Menard Creek and the Trinity River downstream from Mill Creek.

■ We have concluded the statements made in the McDaniels report to the Commission did not raise an issue of fact as to whether the flood breaking the dam was caused by an unprecedented rainfall on February 9th and 10th, 1966, and therefore, the trial court properly granted the motion for summary judgment. Benavides v. Gonzalez, Tex.Civ.App., 396 S.W.2d 512. Schull v. Lower Neches Valley Authority, Tex.Civ. App., 416 S.W.2d 505.

Affirmed.