DECISION AND JUDGMENT ENTRY
{¶ 1} This is an appeal from a Highland County Common Pleas Court judgment, after a trial to the court, that awarded Huntington National Bank, plaintiff below and appellee herein, $14,726.83. Edith Mark, defendant below and appellant herein, assigns the following errors for review:
 {¶ 2} FIRST ASSIGNMENT OF ERROR:
 {¶ 3} "The trial court erred in finding that the surrender of the loan document with the bank's cancellation on it was not a valid cancellation of the lien."
 {¶ 4} SECOND ASSIGNMENT OF ERROR:
 {¶ 5} The findings of the trial court were against the manifest weight of the evidence."
 {¶ 6} In July 1998, appellant purchased a 1997 F150 Ford pickup truck. Appellant executed a loan agreement with appellee in the amount of $19,072.05 to finance the purchase. Appellant also granted to appellee the first and best security interest in the vehicle.
 {¶ 7} Appellant made approximately twenty of the scheduled sixty-six $375.86 monthly payments.[1] Consequently, appellee filed the instant action to recover the money due and owing under the loan agreement. At trial, appellee submitted evidence to establish that appellant did not satisfy the terms of the loan agreement and that as of July 2000, appellant owed appellee $14,876.83 on the note. Robert Smith, a Huntington National Bank "litigation specialist," testified that as of the date of trial, the total amount due, including accrued interest, totaled $19,694.20. Smith also testified that due to a mistake of fact and clerical error, the appellee returned to appellant the loan agreement marked "PAID" and the certificate of title with the lien released.
 {¶ 8} At the conclusion of the trial, the court issued a judgment in appellee's favor. The court wrote in pertinent part:
 {¶ 9} The Plaintiff established by a preponderance of the evidence that the release of the plaintiff's lien on the defendant's Certificate of Title as well as the marking of "PAID" upon the defendant's personal loan agreement occurred through the plaintiff's inadvertence and/or mistake.
 {¶ 10} The last payment made by the defendant upon the loan was on February 16, 2000 and that after deducting this payment the payoff on the loan stood at $14,726.83.
 {¶ 11} * * *
 {¶ 12} 9. This Court agrees with the plaintiff's argument that restitution is the proper remedy in this case. The question, however, is to what time period. Should the Court restore the plaintiff to its position as of February 16, 2000, or its position as of the trial date of June 20, 2003, or some other date. It is the opinion of the Court that the plaintiff must assume fault and the responsibility for its error — not the defendant. Accordingly, the payoff as of February 16, 2000 is the proper "restoration" date. Any windfall or benefit that might befall the defendant by utilizing this date is solely the result of the plaintiff's actions, not the defendant's.
 {¶ 13} Thus, the trial court found in appellee's favor and awarded appellee $14,726.83. This appeal followed.
 {¶ 14} Because appellant's two assignments of error raise related issues, we will consider them jointly. In her first assignment of error, appellant asserts that the trial court erred in finding that appellee's surrender of the loan document did not constitute a valid cancellation of the lien. Appellant contends, citing R.C. 1303.69,[2] that "appellee's employee, either at the direction or under the direct supervision" of appellee, cancelled the lien on the vehicle. Appellant notes that she did not request this action and that appellee "did it on their own volition, voluntarily." Thus, appellant reasons, "the fact that the document was stamped with the official stamp at the direction of or by an employee under the direct supervision of the Plaintiff [appellee] demonstrates the intent to discharge the debt." In her second assignment of error, appellant asserts that the trial court's findings are against the manifest weight of the evidence. In particular, appellant contends that the appellee's only witness, who did not have first hand knowledge of the facts, did not adequately explain why the lien had been discharged.
 {¶ 15} Appellee argues that the record supports the trial court's conclusion that it "inadvertently released the lien on the Certificate of Title and forwarded the original personal loan agreement marked `PAID' by mistake." Appellee contends that its lack of care should not permit the appellant to retain the benefits resulting from appellee's mistake and that restitution is the appropriate remedy. Further, appellee notes that it met its burden of proof when Smith provided unrebutted testimony to show that the lien had been cancelled due to clerical error or mistake.
 {¶ 16} The promissory note at issue in the case at bar is an instrument that falls within the scope of R.C. Chapter 1303. A party may be discharged from liability on a promissory note by, inter alia, payment under R.C. 1303.69 or cancellation pursuant to R.C. 1303.31. R.C. 1303.71 also sets forth various methods by which an obligation under a note may be discharged. In order for a valid discharge to occur, however, an intent to discharge is required.
 {¶ 17} In Kinney v. Columbus Temperature Control Co.
(1981), 2 Ohio App.3d 396, 442 N.E.2d 465, Kinney received a promissory note from Columbus Temperature Control Company (Company) as a bonus for his work as a Company employee. Subsequently, the Company's president and chairman of the board of directors questioned the propriety of the bonus and demanded that the note be returned. After Kinney returned the note to the president's desk, the president marked the note as "void."
 {¶ 18} Kinney argued that he should have been entitled to recover the amount due under the note because he did not renounce his rights under the note and that his surrender of the note was ineffective because he lacked the requisite intent for a valid surrender. The Company argued that Kinney's delivery of the note to the Company president constituted an effective surrender of the instrument.
 {¶ 19} The Franklin County Court of Appeals held, at2 Ohio App.3d 396, 397, 442 N.E.2d 465, 467, that a holder of an instrument may discharge a party's obligation under the instrument when the holder had the intent to discharge:
 {¶ 20} "The central issue on this appeal, however is whether the conduct of plaintiff in returning the note to defendant's president constituted a `surrender' within the meaning of R.C.1303.71(A)(2). The term `surrender' is not defined in R.C. Chapter 1303, nor do we find a previously reported decision in Ohio which defines the term `surrender' as used in that statute. Plaintiff contends that, to be an effective surrender, the holder must have had an intent to discharge the party at the time the instrument was delivered to that party.
 {¶ 21} R.C. 1303.71 manifests the Ohio legislature's adoption of UCC 3-605. UCC 3-605 has been interpreted by courts in other jurisdictions to require that surrender of the instrument be accompanied by an intent to discharge the party to whom the instrument is delivered. White and Summers, Uniform Commercial Code (1972), Section 13-19, at page 447; Citizens Fidelity Bank Trust Co. v. Stark (Ky. 1968), 431 S.W.2d 772; Dluge v.Robinson (1964), 204 Pa.Super. 404, 204 A.2d 279; FirstNational Bank of Martinsville v. Cobler (1975), 215 VA 852,213 S.E.2d 800; Peoples Bank of South Carolina, Inc. v. Robinson
(1978), 272 S.C. 155, 249 S.E.2d 784.
 {¶ 22} In its decision the trial court discussed the issue of the validity of the alleged surrender stating:
 {¶ 23} `* * * On this issue, while there was a natural reluctance by the plaintiff to give up the note, Leo Walsh did not force the surrender with a threat of dismissal from his employment or otherwise. That is, the Court finds that the surrender was valid and not induced by duress.'
 {¶ 24} Upon an examination of the record, we conclude that plaintiff's delivery of the note to defendant's president constituted a valid surrender, because said delivery was accompanied by an intent to discharge defendant. Unlike the cases cited above, and the cases upon which plaintiff relies, this is not a case in which the actual delivery of the note was done as a result of mistake, fraud or misrepresentation. Plaintiff's testimony indicates that the delivery of the note was done voluntarily after a week or ten-day period during which plaintiff deliberated over the request to return the note. Plaintiff's testimony indicates an awareness that the surrender of the note meant that there would be no payment made on the note. In fact, there is contradictory testimony between plaintiff and Joseph Riley, who also surrendered a note from defendant, as to whether plaintiff received legal advice prior to placing the note on Mr. Walsh's desk.
 {¶ 25} We find that plaintiff voluntarily and knowingly delivered the note to Mr. Walsh. It is well settled that a person will be found by the law to intend the consequences of his act. If, in fact, plaintiff was not aware of the consequences of his conduct, he was certainly in a position to ascertain them prior to the delivery of the note. By intentionally delivering the note to Walsh, plaintiff did validly surrender the note within the terms of R.C. 1303.71(A)(2).
 {¶ 26} Thus, an effective and valid surrender by the holder of a note must be accompanied by the holder's intent to discharge the obligated party.
 {¶ 27} In the case at bar, appellant asserts that the evidence adduced at trial does not support the trial court's conclusion that the note's surrender resulted from inadvertence or mistake rather than appellee's intent to discharge the obligation. Appellant contends that "the fact that the document was mailed to the proper person and address demonstrates the requisite intent to surrender." Appellant notes that appellee's witness testified that he had reviewed the file involved in this matter, but that he possessed no first-hand knowledge of the facts. Appellant castigates appellee its failure to "produce the employee who allegedly mistakenly discharged the lien or stamped the note `paid'."
 {¶ 28} The appellee notes that Smith provided unrebutted testimony that he had reviewed the records and accounts and that the lien's discharge resulted from a mistake or clerical error, not bank policy or a decision to forgive the amount due under the note. The appellee further asserts that (1) "appellant presented no evidence of payment or explanation of why the lien would have been marked `paid' when payment in full was never made; (2) appellant did not appear at trial and offered no testimony; and (3) testimony established that appellant made a monthly payment after appellee had mistakenly marked the loan paid, thus confirming that marking the note paid was a mistake. The appellee reasons that the evidence established, by a preponderance, that a clerical error or mistake had been made.
 {¶ 29} When an appellate court considers manifest weight of the evidence claims, appellate courts must not re-weigh the evidence. In C.E. Morris v. Foley Construction Co. (1978),54 Ohio St.2d 279, 280, the Ohio Supreme Court wrote:
 {¶ 30} "Judgements supported by some competent, credible evidence going to all the essential elements of the case will not be reversed by a reviewing court as being against the manifest weight of the evidence."
 {¶ 31} See, also, Vogel v. Wells (1991), 57 Ohio St.3d 91;Ross v. Ross (1980), 64 Ohio St.2d 203. An appellate court should not substitute its judgment for that of the trial court when there exists competent, credible evidence going to all the essential elements of the case. In Seasons Coal Co. v.Cleveland (1984), 10 Ohio St.3d 77, 80, the court wrote:
 {¶ 32} "The underlying rationale of giving deference to the findings of the trial court rests with the knowledge that the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony."
 {¶ 33} In the case sub judice, we believe that the record contains sufficient competent, credible evidence to support the trial court's judgment. The trial court determined that the surrender of the note and the release of the lien occurred through a clerical error or a mistake. Thus, the court concluded that the surrender of the note did not constitute a valid discharge of the obligation in view of the fact that the appellee lacked the necessary intent to discharge the obligation. After our review of the evidence, we find no error with the trial court's conclusion. Robert Smith testified that the surrender occurred through a mistake or a clerical error. His testimony, if accepted as true, provides an adequate basis for the trial court's finding. We again note that in matters that involve credibility, we, as a court of review, must defer to the trier of fact. In the case sub judice, the trier of fact obviously found Smith's testimony credible and determined that appellee lacked the necessary intent to discharge the obligation.
 {¶ 34} Accordingly, based upon the foregoing reason we overrule appellant's assignments of error and affirm the trial court's judgment.
Judgment Affirmed.
 JUDGMENT ENTRY
It is ordered that the judgment be affirmed that appellee recover of appellant costs herein taxed.
The Court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute that mandate pursuant to Rule 27 of the Rules of Appellate Procedure. Exceptions.
Kline, P.J. Harsha, J.: Concur in Judgment Opinion
[1] Appellant's appellate counsel maintains in the appellate brief that appellant stopped making monthly payments when she received in the mail the original personal loan agreement that depicted a "PAID" notation stamp together with the vehicle's original certificate of title with a "Lien Cancelled" stamp affixed. Appellee notes, however, that no testimony to support this assertion appears in record because appellant did not appear at trial.
[2] R.C. 1303.69 provides:
(A) A person entitled to enforce an instrument, with or without consideration, may discharge the obligation of a party to pay the instrument in either of the following ways:
(1) By surrender of the instrument to the party, destruction, mutilation, or cancellation of the instrument, cancellation or striking out of the party's signature, the addition of words to the instrument indicating discharge, or any other intentional voluntary act;
(2) By agreeing not to sue or otherwise renouncing rights against the party by a signed writing.
(B) Cancellation or striking out of an indorsement pursuant to division (A) does not affect the status and rights of a party derived from the indorsement.